Junior FLOWERS and Jan
Flowers Respondents,

v.

Jack ROBERTS and Shirley Roberts, and
Ronald R. Hall, Sr. and Shirley Hall,
Appellants.

No. 73833.

Missouri Court of Appeals,
Eastern District,
Division Two.

Oct. 13, 1998.

Melissa J. Blevins, Clinton B. Roberts, Tom R. Burcham, Roberts, Roberts & Burcham, L.L.C., Farmington, for appellants.

John L. Oliver, Jr., Oliver, Oliver & Waltz, P.C., Cape Girardeau, for respondents.

RICHARD B. TEITELMAN, Judge.

This appeal arises from a boundary-line dispute between adjoining northern and southern landowners. Plaintiffs, Junior and Jan Flowers, brought an action against defendants, Jack and Shirley Roberts and Ronald and Shirley Hall, for trespass and to quiet title in a disputed tract of land plaintiffs claimed by adverse possession. Defendants brought counterclaims against plaintiffs for trespass and removal of timber. The trial court entered judgment in favor of plaintiffs on their adverse possession and trespass claims and against defendants on their counterclaims. Defendants appeal. We reverse in part and affirm in part, finding that plaintiffs failed to establish ownership under a theory of either adverse possession or boundary by acquiescence, and that defendants' counterclaims are barred by statute of limitations.

### Facts

We view the evidence in the light most favorable to the trial court's findings.

The disputed tract is a fifteen hundred forty (1540) foot long by approximately eighty-eight to ninety (88 to 90) foot long rectangular strip of land which lies in a rural, wooded area of Section 22, Township 29 North, Range 1 East, Reynolds County, Mis-

souri.[1] It is situated along the common boundary of the parties. As the trial court noted, the dispute involves the location of the east-west running center line that divides the North Half and the South Half of the Northeast Quarter of Section 22, and that likewise divides the North Half and the South Half of the Northwest Quarter of Section 22. The parties have made precise review more difficult by failing to provide us with a complete map or survey of the area in question. Our own not-to-scale map is now presented as an appendix.

Let us begin by first examining the parcels of land the respective parties own, and when they each acquired those parcels. In 1980, defendants Mr. and Mrs. Hall acquired their property from one James Hackworth. The Halls' parcel is 80 acres, consisting of the South Half of the Northwest Quarter of Section 22. On March 8, 1984, defendants Mr. And Mrs. Roberts purchased their parcel from a Mr. Jenkins, consisting of the South Half of the Northeast Quarter of Section 22. Plaintiffs' parcel consists of the North Half of the Northeast Quarter of Section 22, and the northeast quarter of the Northwest Quarter of Section 22. Plaintiffs first occupied and utilized this land in January of 1983, as tenants, for the purpose of running cattle and timber operations. They subsequently purchased the land on March 13, 1984, from a Mr. and Mrs. Lancaster.

At trial, there was evidence of several stone pile monuments erected as corner boundary markers, and testimony that these monuments marked a boundary line which, for many years, had been recognized and accepted by all of the parties' predecessors in interest as being the "true" north/south dividing line between the Flowers property to the north and the Hall and Roberts properties to the south. The trial court accepted this evidence as true, and also found that neither the Roberts nor the Halls ever had any clear and definite understanding, at the time each of them acquired their respective properties, as to their northern boundary line.

In March of 1984, a week or two after he had purchased his tract, plaintiff Flowers bladed and bulldozed a dirt road along almost the entire length of what he believed to be his south boundary line, from the electric utility easement on his east to his southwest corner. He built this road adjacent to, and on the inside of, the line marked by the stone pile monuments. He also at that time cut down the timber along this swath and sold it, and put blaze marks on some of the remaining trees bordering the dirt road.

Thereafter, until 1993, plaintiffs' only possessory acts with respect to the disputed tract consisted of some efforts aimed at maintaining the dirt road, as well as driving over the property several times a year every year in motor vehicles.

In April of 1993 plaintiff Junior Flowers built a fence, which paralleled the dirt road and ran along what he believed to be his southern boundary line. Extending for approximately 1540 feet from the electric utility easement on the east to plaintiffs' assumed southwest corner on the west, the fence was adjacent to and just on the inside of the line marked by the stone pile monuments.

In June of 1993, defendant Jack Roberts entered onto the disputed tract and partially cut down this fence. At about the same time, plaintiff Flowers received a letter from defendant Roberts' attorney, notifying him that Roberts considered the fence to be on his property and demanding that he cease and desist from any further fence construction or other acts of trespass.

In response, plaintiff Junior Flowers ordered a survey to be performed of the area running along the fence line. However, this survey was limited to the fence line area located in the Northeast Quarter of Section 22, which abutted the Roberts property, and did not include any portion of the fence line lying in the Northwest Quarter of Section 22, which abutted the Hall property.

The survey was performed by a registered surveyor. It showed that the line marked by the stone pile monuments, along the fence line, was located approximately 88½ to 90 feet

---

1. Though the property in question is located in Reynolds County, the case was tried upon a change of venue in the Circuit Court of Perry County.

south of the actual east-west center line of the Northeast Quarter of Section 22, the line which divides the North Half of that Quarter from the South Half.

Thereafter, on November 13, 1996, plaintiffs filed this action against both the Halls and the Roberts. It sought to quiet title to the disputed tract, which plaintiffs claimed to own by adverse possession. It further sought damages in trespass, solely against defendant Roberts, for removing the fence. Both defendants filed answers and counterclaims against plaintiffs, seeking damages for trespass and for alleged removal of timber in violation of Section 537.340 RSMo 1994.

A non-jury trial was held on August 26, 1997. The trial court entered its judgment shortly thereafter, awarding plaintiffs ownership of the disputed tract by adverse possession, as well as damages in the amount of $3080.00 for cutting the fence. The judgment also denied the counterclaims of both defendants, the Halls and the Roberts. Defendants now appeal.

### Discussion

#### I.

When reviewing a court-tried case, we adhere to the principles set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The trial court's judgment will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or misapplies the law. *Id.* Further, we defer to the trial judge's superior ability to assess the credibility of the witnesses. *Brinner v. Huckaba*, 957 S.W.2d 491, 494 (Mo. App. E.D.1997).

Defendants' first point on appeal contends that the trial court erred in awarding plaintiffs title to the disputed tract through adverse possession because the evidence failed to establish any of the required elements of adverse possession, with respect to either plaintiffs themselves or their predecessors in title.

■ To establish title to a tract of land by adverse possession, a claimant must prove by a preponderance of evidence that his possession of the land was (1) hostile and under a claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous for a period of ten years. *Conduff v. Stone*, 968 S.W.2d 200, 203 (Mo.App. S.D.1998). The claimant may tack his adverse possession to that of his predecessors in title to establish the requisite ten years period. *Id.* In determining whether the facts in evidence warrant a finding that the elements of adverse possession have been satisfied, each case must be decided in light of its own unique circumstances, and much depends on the location, the character, and the use to which the land in question can reasonably be put. *Teson v. Vasquez*, 561 S.W.2d 119, 125 (Mo.App. E.D.1977). A claimant's failure to establish any one of the elements of adverse possession will necessarily defeat the claim. *Witt v. Miller*, 845 S.W.2d 665, 667 (Mo.App. E.D.1993). In the context of adverse possession, these necessary possessory elements have been defined as follows:

■ "Hostile and under claim of right" means that the possession must be opposed and antagonistic to the claims of all others, and the claimant must occupy the land with an intent to possess it as his or her own. *Brinner v. Huckaba*, 957 S.W.2d at 494. Whether possession is hostile and under claim of right is a question of intent, though such intent may often be inferred from the claimant's acts of dominion over the land. *Id.* at 495. See also *Kitterman v. Simrall*, 924 S.W.2d 872, 876 (Mo.App. W.D.1996).

■ "Actual" possession is manifested by acts of occupancy which indicate a present ability to control the land and an intent to exclude others from such control. *Szombathy v. Shell Oil Co.*, 676 S.W.2d 15, 18 (Mo. App. E.D.1984). Whether possession is "actual," and the kinds of acts which will constitute such possession, depends on the nature and location of the property and the possible uses to which it can be put. *Whiteside v. Rottger*, 913 S.W.2d 114, 120 (Mo.App. E.D. 1995); *Witt v. Miller*, 845 S.W.2d at 668.

■ The element of "open and notorious" possession is satisfied when there are "visible acts of ownership" exercised over the disputed property. *Witt*, 845 S.W.2d at 668. The reason the law requires that possession be

"open and notorious" is to afford the owner reasonable notice, either actual or constructive, that an adverse claim of ownership is being made by another. *Teson v. Vasquez,* 561 S.W.2d at 127; *Szombathy v. Shell Oil Co.,* 676 S.W.2d at 19.

"Exclusive" possession means that the claimant must hold the land for himself or herself only, and not for another. *Witt v. Miller,* 845 S.W.2d at 667. To satisfy this element an adverse possession claimant must show that he or she "wholly excluded" the owner from possession for the required period; but this does not mean that mere "sporadic use, temporary presence or permissive visits by others (including the title holder)" will negate this element and defeat a claim of adverse possession. *Machholz–Parks v. Suddath,* 884 S.W.2d 705, 708 (Mo.App. S.D. 1994).

The fifth required element of adverse possession is that such possession must be "continuous for a period of ten years." "Continuous" means without lapse, uninterrupted, for the entire statutory period. *Teson v. Vasquez,* 561 S.W.2d at 127. Ten years means ten years. The years must be consecutive and need not be the ten years immediately prior to the filing of the law suit, but once the ten-year period has run, the possessor is vested with title and the record owner is divested. *Kitterman v. Simrall,* 924 S.W.2d at 876. The claimant, in certain circumstances, may tack his or her adverse possession on to his or her grantor's time of adverse possession in order to establish the requisite ten years. *Id.* In all cases, however, the claimant is required to prove that the ten-year period of continuous possession is one during which all of the required elements (hostile and under claim of right, actual, exclusive, open and notorious) have consistently been met. An adverse possession claim will fail, for example, where the claimant shows actual possession for ten years but the evidence also indicates that for significant portions of that time the possession was not sufficiently hostile. *Brinner v. Huckaba,* 957 S.W.2d 491, 496 (Mo.App. E.D.1997).

Defendants here contend that plaintiffs proved none of the required five elements. In part, we agree.

Viewing the record in the light most favorable to the judgment, there was sufficient evidence to support a finding that plaintiffs' possession was "hostile." A claimant can have such an intent in cases where he or she claims title up to a supposed boundary line that he or she mistakenly believes to be the true boundary line. *Weaver v. Helm,* 941 S.W.2d 801, 805 (Mo.App. S.D. 1997); *Anson v. Tietze,* 354 Mo. 552, 190 S.W.2d 193, 196 (Mo.1945). Likewise, there was sufficient evidence to support a finding that plaintiffs' possession of the disputed tract was "actual." Defendants argue that plaintiffs' activities on the land were too minimal and infrequent to establish actual possession, citing a line of cases suggesting that a higher level of possessory activity may be required with respect to "wild and undeveloped land." See *Cunningham v. Hughes,* 889 S.W.2d 864, 867 (Mo.App. W.D.1994). While we acknowledge the so-called "wild lands" cases, we rejected such an argument in the particular circumstances of *Whiteside v. Rottger,* and find it to be unpersuasive in the similar circumstances here as well. *Whiteside,* 913 S.W.2d at 120. The trial court also was entitled to find from the evidence that plaintiffs' possession of the disputed tract was "exclusive," i.e., that they held it for themselves and not for another.

As a matter of law, however, there was not sufficient evidence for the trial court to find that the claimed adverse possession here was truly "open and notorious." The first clearly hostile, open and notorious act of dominion and control that plaintiffs exerted over the disputed tract was their cutting of timber and bulldozing a dirt road in it in March of 1984, along the line marked by the stone pile monuments, which they believed was their southern boundary line. For more than nine years after that, the uncontroverted evidence shows that plaintiffs' *only* possessory acts were minimal and sporadic efforts to maintain the dirt road, and driving over the road a few times each year. Under the circumstances, these very limited activities do not amount to the kind of clearly obvious or conspicuous "visible acts of ownership" which would be sufficient to put a

reasonable property owner on notice that an adverse claim of ownership was being made by another. *Teson v. Vasquez*, 561 S.W.2d at 127.

The fact that the land in question is wild, undeveloped and covered in woods and hills in no way lessens what is required to satisfy the element of possession being "open and notorious" and, indeed, may very well increase it. See *Moore v. Dudley*, 904 S.W.2d 496, 498. Here, following their bulldozing the road and cutting some timber in 1984, not only did plaintiffs refrain for over nine years from doing anything whatsoever with respect to the disputed tract that could fairly be deemed "open and notorious," but when they finally did once again do something regarding the disputed tract that *was* open and notorious and would put a reasonable property owner on notice that an adversarial claim of ownership was being made ——namely, erecting the fence along the line marked by several stone pile monuments —— the defendants responded almost immediately to that act by cutting down the fence and disputing plaintiffs' claim. We hold that plaintiffs' possession of the disputed tract was not "open and notorious" for most of the period they claimed to have held by adverse possession.

■ The evidence here also does not support a finding that plaintiffs possessed the disputed tract——whether openly and notoriously or otherwise——for the requisite ten-year period. Plaintiffs acquired their parcel in March of 1984. In June of 1993, defendant Roberts cut the fence that plaintiffs had erected in the disputed tract, and shortly thereafter both defendants notified plaintiffs that they maintained that the fence and the disputed tract were within their own respective deeded properties. Clearly, these acts by defendants terminated the "exclusive" hostile possession required in order for plaintiffs to establish a claim of adverse possession, nearly nine months before the neces-

sary ten-year period had elapsed since plaintiffs purchased their property.[2] For once defendants responded in this manner to plaintiffs' act of erecting the fence, they thereby plainly manifested *their* claims of ownership with regard to the disputed tract, so that plaintiffs' possession of the tract was no longer "exclusive" for purposes of an adverse possession claim. See *Cunningham v. Hughes*, 889 S.W.2d at 867. Any adverse possession on the part of plaintiffs themselves thus lasted less than ten years, and in order to satisfy the required ten-year period they would have to tack their possession on to that of their predecessors in interest.

■ This is not a case where the evidence permits such tacking. In order to qualify for tacking, it must be shown that the time of prior possession by the plaintiff's predecessor in title which is sought to be tacked on to plaintiff's time was *itself* adverse in character, such as would satisfy the elements of adverse possession. See *Crane v. Loy*, 436 S.W.2d 739, 743–44 (Mo.1968); *Heigert v. Londell Manor, Inc.*, 834 S.W.2d 858, 865–66 (Mo.App. E.D.1992); *Conduff v. Stone*, 968 S.W.2d 200, 203 (Mo.App. S.D. 1998). While the trial court found that plaintiffs' grantors probably believed that the line marked by the stone pile monuments was their actual southern boundary line, and it appears that the grantors intended to include the disputed tract within the land they transferred to plaintiffs, there is virtually no other evidence in the record regarding the character or nature of plaintiffs' grantors' possession of the disputed tract. This is not sufficient to prove that such prior possession (if any) amounted to *adverse* possession. Plaintiffs therefore are not entitled to tack their predecessors' possession on to their own.

Point I is granted. Plaintiffs did not establish that their possession of the disputed tract was open and notorious; they also did not establish that possession was continuous for a period of ten years. Accordingly, the

---

**2.** Plaintiff Junior Flowers first occupied his property in January of 1983. He did so as a tenant, for the purpose of running cattle and timber operations. He and his wife then purchased the land, in March of 1984. His time of possession as a renter, however, cannot be included as part of his alleged period of adverse possession, since

permissive use of property as a lessee is necessarily subservient to the recognized, superior claim of ownership of another and therefore is not "hostile" or "exclusive" within the meaning of adverse possession. See *Bollinger v. Henry*, 375 S.W.2d 161, 164–65 (Mo.1964); *Brinner v. Huckaba*, 957 S.W.2d at 495.

judgment awarding plaintiffs ownership of the disputed tract by reason of adverse possession was error and must be reversed, and the judgment awarding them $3,080 in damages for trespass must likewise be reversed.

## II.

In Point II defendants contend that the trial court's award of the portion of the disputed tract adjoining defendant Hall's property was erroneous because, in contrast to the portion adjoining the Roberts property, no survey or other evidence was ever introduced regarding either the exact location of the fence line along Hall's property or the exact location of Hall's northern boundary. Defendants therefore argue that at least that portion of the adverse possession judgment must be reversed, because an adverse possession claim "cannot be sustained unless the claimant can establish the precise boundaries of the property claimed, and absent such proof, the judgment is void and rests on speculation and conjecture." *Kitterman v. Simrall*, 924 S.W.2d at 877. In view of our decision as to Point I, holding that the entire adverse possession judgment is erroneous, Point II is moot and we therefore do not address its merits.

## III.

■ In their third point on appeal, defendants contend that the trial court erred in determining the existence of a "boundary of acquiescence" along the line marked by the stone pile monuments. This finding was incorrect, they argue, because there was no evidence that defendants ever agreed to any boundary other than whatever might be the true east-west center line in the Northeast Quarter and Northwest Quarter of Section 22. Defendants argue further that even assuming there was some evidence of such a boundary by acquiescence, it is clear that any acquiescence was for less than the minimum ten-year period which, they claim, is required under Missouri law.

Though the doctrine of boundary by acquiescence is somewhat "murky," it clearly is "a

distinct theory from that of adverse possession." *Conduff v. Stone*, 968 S.W.2d 200, 204 (Mo.App. S.D.1998). In some respects the facts of *Conduff*, and the trial court's reliance there on a theory of boundary by acquiescence, are similar to this case. Here, just as in *Conduff*, even though the trial court's judgment was expressly couched only in terms of adverse possession, it employed language which seems to be based on "a combination of the theories of adverse possession and boundary by acquiescence." *Id.* at 202. Yet a theory of boundary by acquiescence was never pleaded by the plaintiffs; nor was it tried. One difference is that in this case, unlike in *Conduff*, the plaintiffs have candidly acknowledged in their brief that a boundary by acquiescence was never claimed by them.

■ Relief granted in a judgment is limited to that which is either sought by the pleadings or else tried by the express or implied consent of the parties. *Conduff*, 968 S.W.2d at 205. Neither occurred here. And even assuming, *arguendo*, that a theory of boundary by acquiescence might have been tried by implied consent, the evidence in this case clearly would not support such a claim. The trial court's factual findings are, on their face, inconsistent with a theory that either defendant Hall or defendant Roberts ever specifically agreed to or acquiesced in the line marked by the stone pile monuments as being the accepted boundary line.

Accordingly, to whatever extent the trial court's judgment awarding ownership of the disputed tract to plaintiffs may have been based on a theory of boundary by acquiescence, it is reversed.

## IV.

In Point IV, defendants contend there was insufficient evidence to support the trial court's determination regarding the existence and location of several stone pile monuments, monuments which the court found marked a boundary line between the parties' respective properties.[3] We have scrutinized the record and defendants are wrong in this contention,

---

**3.** Defendants do concede the existence and location of at least one of these stone pile monuments, which is referred to on the not-to-scale

map attached to this opinion as the "undisputed" monument.

which misstates our applicable standard of review. There was substantial evidence to support the trial court's findings regarding the stone piles, and we defer to the trial court's superior ability to assess the credibility of witnesses. Nevertheless, this issue is irrelevant in light of our holding that plaintiffs have failed to establish their claim of adverse possession, and have neither pled nor proved a claim of boundary by acquiescence.

## V.

■ In their fifth point relied on defendants contend that the trial court erred in ruling against them on their counterclaims, which sought damages under common law trespass for plaintiffs' act of building the dirt road in the disputed tract, and statutory treble damages under Section 537.340 RSMo for the removal of timber. The weight of evidence supported these counterclaims, defendants argue, and the trial court improperly found them to be time-barred.

On this point, defendants are incorrect as to the standard of review. The trial court found that the road-building and timber-cutting activities occurred in March of 1984. There was substantial evidence to support this finding; and the trial court specifically discredited conflicting testimony that these activities may have occurred sometime later than March of 1984. Thus, regardless of whether the relevant statute of limitations is the five-year period applicable to common law trespass claims or the three-year period applicable to statutory claims made under Section 527.340 RSMo, the damages for these activities occurred in 1984, the statute of limitations ran in 1989, and to that extent the counterclaims are time-barred.

■ Our review of the Legal File reveals that a part of defendants' counterclaims for trespass dealt with plaintiffs' construction of the fence, which occurred in 1993. However, nothing in defendants' fifth point relied on, or in the argument under that point, addresses construction of the fence or any contention that the trespass counterclaims for that act may not be time-barred. Under these circumstances, we hold that any possible claim of error which defendants had that their trespass counterclaims regarding the fence were not time-barred has not been adequately briefed and is, therefore, waived. Rule 84.13(a). Point Five is denied.

The trial court's judgment entered in favor of plaintiffs with respect to defendants' counterclaims is affirmed. The judgment in favor of plaintiffs with respect to their claim of trespass against defendant Jack Roberts, and the court's award of damages in the amount of $3,080.00 on that claim, is reversed. Finally, with respect to ownership of the disputed tract, the trial court's judgment quieting title in plaintiffs based on adverse possession, and also to the extent that such judgment may have been based on a theory of boundary by acquiescence, is reversed. The parties each own what is granted to them in their respective record title deeds.[4]

JAMES R. DOWD, P.J., and CRAHAN, J. concur.

4. The record on appeal indicates that the parties' respective deeds each reflect that it is the east-west center line of the Northwest Quarter of Section 22, together with the east-west center line of the Northeast Quarter of Section 22, which is the boundary or "dividing line" between the Flowers property to the north and the Hall/Roberts properties to the south. If there remains a controversy as to the true location of that east-west center line, the parties presumably would still have a remedy for that by way of an action to establish boundary line. *Ollison v. Village of Climax Springs*, 916 S.W.2d 198, 203 (Mo. banc 1996).

# APPENDIX

NW 1/4, Sec. 22            NE 1/4, Sec. 22

| NW | NE | NW | NE |
|---|---|---|---|
| | | FLOWERS | |
| SW | SE | SW | SE |
| HALL | | ROBERTS | |

\* Electric Utility Easement
-- Line Marked by the Stone Pile Monuments
O "Undisputed" Stone Pile Monument
▦ Disputed Tract