Donald **LUTTRELL** and Penny Luttrell, Plaintiffs–Appellants,

v.

Jerry **STOKES**, Mark Stokes, and Vickie Stokes, Defendants–Respondents.

No. 24349.

Missouri Court of Appeals, Southern District, Division Two.

July 2, 2002.

Paul F. Sherman, of Daniel, Powell & Keifer, L.L.C., Springfield, MO, for appellant.

Craig F. Lowther and Randy J. Reichard, of Lowther Johnson, Springfield, MO, for respondents.

JAMES K. PREWITT, Judge.

Donald and Penny Luttrell ("Appellants") appeal a judgment awarding 9.76 acres of land of which they were record title owners to Jerry Stokes ("Respondent") by adverse possession. Appellants are record title owners to two plots of land, designated Property A and Property B for trial purposes, and claimed Respondent encroached onto a total of 9.76 acres of land, which fell across the two stated property plots. Respondent is record title holder of land adjacent to those plots. Appellants raise two points. In their first point, Appellants charge that the trial court erred by making an inaccurate statement of fact regarding which part of the disputed property was the subject of a prior lawsuit and claim that Property A was entitled to the wilderness presump-

tion. In their second point, Appellants argue that the trial court misapplied the law because there was not substantial evidence to establish all of the required elements of adverse possession. We affirm.

Property A and Property B were separate portions of an 80–acre tract formerly owned by Elmer Cruse ("Father"). At some point Father sold Property A and upon his death, the remaining 60 acres, 20 acres of which represented Property B, were divided among his three sons. Eddie Cruse and his wife ("the Cruses" or "Cruse" when referring to Eddie Cruse individually) became record title owners of Property B. In 1983, the Cruses filed a declaratory judgment action against Respondent, alleging that Respondent claimed ownership of a southern portion of Property B pursuant to adverse possession. The Cruses subsequently dismissed the suit.

Appellants purchased Property A in 1995 and purchased Property B from the Cruses in 1998. On February 11, 1999, Appellants filed suit against Respondent and his son, Mark, for ejectment and trespass related to the alleged encroachment by the Stokes into Property A and Property B.[1] Respondent filed a counterclaim, alleging that he had acquired title to the disputed 9.76 acres of property within Property A and Property B by adverse possession. Respondent also sought damages for Appellants' alleged removal of a fence on this disputed property. Following trial, the trial court entered an amended judgment, as well as findings of fact and conclusions of law, finding that Appellants were not owners of the disputed property, but that Respondent owned the property by adverse possession. This appeal followed.

In their first point, Appellants claim that the trial court erred by incorrectly stating one of its findings, inferring that more than Property B was the subject of the earlier declaratory judgment lawsuit filed by the Cruses. Also within Point I, Appellants claim that trial court erred because Property A was entitled to the wilderness presumption.

The finding at issue, paragraph four of the findings of facts and conclusions of law, reads as follows: "The [trial] [c]ourt finds that portion of the real property in dispute was subject of an earlier declaratory judgment lawsuit, ... filed in Greene County in 1993 between [the Cruses] against [Respondent]." Before proceeding, we note that there is one definite inaccuracy within the finding; however, it is one that no party has referenced. Although the finding indicates that the prior lawsuit was filed in 1993, the record before us indicates that the lawsuit was filed in 1983 and that no lawsuit filed in 1993 is at issue in the case. In terms of the inaccuracy claimed by Appellants, they argue that the wording of the finding does not restrict the property in dispute within the earlier lawsuit to Property B.

Our general standard of review in a court-tried case is that we must sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously applies the law, or unless it erroneously declares the law. *Pinnell v. Jacobs*, 873 S.W.2d 925, 927 (Mo.App.1994). Further, we will accept all evidence and inferences favorable to the judgment, disregarding all contrary inferences, and will afford the trial court deference with respect to its opportunity to observe the witnesses and assess their credibility. *Id.*

---

**1.** Mark Stokes' wife, Vickie, was later added as a party defendant.

When a trial court's findings are inaccurate or incorrect, we consider whether the mistake impairs the soundness and validity of the trial court's judgment. *Moore v. Beck,* 664 S.W.2d 15, 19–20 (Mo. App.1984). The mistake does not serve as grounds for reversal unless it materially affects the merits of the case. *Burgess v. Sweet,* 662 S.W.2d 916, 918 (Mo.App.1983). In the case at bar, although inserting the word "a" before the word "portion" would have made the finding more clear, the absence of the word "a" neither makes the finding unclear nor infers that both Property A and Property B were the subject of the earlier lawsuit. A subsequent finding, on the same page as the one at issue, states "[t]hat the disputed land that was subject to the previous lawsuit was the east portion of the disputed land." We fail to see how the finding at issue was inaccurate or unclear, particularly given the other findings. Whatever inaccuracies are present in the finding, they in no way prejudiced Appellants, impaired the soundness and validity of the judgment, or materially affected the merits of the cause.

Also within Point I, Appellants argue that Property A was entitled to a wilderness presumption. Respondent argues that this issue is not properly preserved for review in that it does not meet the requirements of Rule 84.04(d), Missouri Rules of Civil Procedure (2000). We agree, but will address the issue simply for clarification purposes as it relates to the meaning and applicability of the wilderness presumption. It is correct that if the disputed property here is considered wild and vacant land, there is a presumption that possession is in Appellants as the record owners, and that Respondent carries the burden to show that he held title by adverse possession. *Cunningham v. Hughes,* 889 S.W.2d 864, 866 (Mo.App. 1994). However, Appellants' argument that the burden to rebut the wilderness presumption is necessarily higher than that required to prove adverse possession for non-wilderness land is incorrect.

Appellants accurately state that "[t]he fact that the land in question is wild, undeveloped and covered in woods and hills in no way lessens what is required to satisfy the element of possession being 'open and notorious' and, indeed, may very well increase it." *Flowers v. Roberts,* 979 S.W.2d 465, 471 (Mo.App.1998). Given that the wilderness nature of the land may make it more hidden from public view, actions one takes in an effort to be open and notorious and put a reasonable property owner on notice that an adversarial claim of ownership is being made may need to be above and beyond those necessary to meet that element for non-wilderness property. *See id.* However, the wilderness presumption does not heighten the level of proof required for all elements of adverse possession.

Consideration of an adverse possession claim also takes into account the nature, location, and character of the land in question. *Harris v. Lynch,* 940 S.W.2d 42, 45 (Mo.App.1997). Actions that support a finding of adverse possession in a densely populated or highly developed area are not the same as those that would support a finding for land that is sparsely populated or undeveloped. *Id.* The "actual possession" element of adverse possession is less strict for wild, undeveloped land than it is for developed land, because the nature, location, and possible uses for the property may restrict the type of affirmative acts of ownership that may be appropriate for the land. *See Whiteside v. Rottger,* 913 S.W.2d 114, 120 (Mo.App.1995). Thus, although Appellants may be correct that Property A was entitled to a wilderness presumption, we disagree that Respondent failed to rebut the presumption,

which we will more fully discuss as we address Point II.

In their second point, Appellants charge that the trial court erred in its application of the law by concluding that Respondent owned the disputed land by adverse possession. Appellants claim that Respondent failed to establish all of the required elements of adverse possession. Two of their three subpoints focus on evidence regarding a fence. First, Appellants claim that the evidence regarding the existence and maintenance of a fence was not sufficient to constitute actual possession of the disputed property or to rebut the aforementioned wilderness presumption. Second, Appellants claim that the fence did not establish a boundary line as no evidence was presented that the fence was built by mutual agreement for that purpose. Within the third subpoint, Appellants charge that there was not sufficient evidence presented that Respondent's possession of the disputed land was exclusive for ten consecutive years.

We follow the same general standard of review as was used in Point I and sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously applies the law, or unless it erroneously declares the law. *Pinnell*, 873 S.W.2d at 927. We will accept all evidence and inferences favorable to the judgment, disregarding all contrary inferences, and will afford the trial court deference with respect to its opportunity to observe the witnesses and assess their credibility. *Id.*

■■■ To prevail on a claim of adverse possession, Respondent must prove by a preponderance of the evidence each of the following five elements: that the possession was (1) hostile and under a claim of right, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous for a period of ten years. *Harris*, 940 S.W.2d at 45. The claim is defeated if Respondent fails on any one of the five elements. *Id.* We will address Appellants' Point II by considering each of the elements, which will incorporate discussion of the fence.

■■■ The hostile element is satisfied by a possession that is antagonistic to the claims of all others, with an intent to occupy the disputed land as one's own. *Weaver v. Helm*, 941 S.W.2d 801, 804 (Mo.App. 1997). A claimant's intent may be inferred from his or her acts of dominion over the land. *Flowers*, 979 S.W.2d at 469. In the case at bar, the evidence was that Respondent pastured cattle on the disputed property from 1967 through 1987 and that the erected fence kept the cattle from going beyond the area. Respondent testified that he maintained and repaired the fence, mowed up to the fence, spread lime to the fence, and hayed up to the fence. Cruse testified that he never ran cattle south of the fence (which was the area in dispute), but that he was aware that Respondent ran cattle in that area. Cruse also testified that he did not fertilize or do anything to the land south of the fence. In addition, Cruse testified that he was aware that Respondent was using the land south of the fence from 1983 through 1997. Another definition of hostile with respect to adverse possession is that a claimant's occupancy be in defiance of, rather than in subordination to, the rights of others. *Weaver*, 941 S.W.2d at 805. Respondent testified that his response to the Cruses' 1983 lawsuit was to inform Cruse that the fence was not going to be moved. Cruse testified that Respondent answered his request for the land south of the fence by saying, "No. That fence has been there forever. It's mine." Evidence also showed that Respondent had posted "No Trespassing" signs. Respondent's possession was hostile and under a claim of right.

As noted in Point I, the affirmative acts required to meet the actual possession prong of adverse possession are less strict when the disputed land is wilderness or undeveloped. *Whiteside,* 913 S.W.2d at 120. As noted above, the evidence showed that Respondent pastured cattle on the land, maintained and repaired a fence, and maintained and fertilized the land, a portion of which Cruse described as being woods and brush. For the type of land described, the acts of possession undertaken by Respondent satisfied the actual possession element.

■ The open and notorious element of adverse possession is satisfied by exercising visible acts of ownership on the disputed property. *Weaver,* 941 S.W.2d at 804. Maintaining and improving the property are examples of such visible acts of ownership. *Id.* As Appellants have noted and we discussed in Point I, if land is wild or undeveloped, this requirement may actually be heightened in order to put a reasonable property owner on notice that an adversarial claim was being made against the property. *Flowers,* 979 S.W.2d at 471. Respondent's acts described above, including running cattle on the property; maintaining and repairing the fence; and maintaining, fertilizing, and mowing the land up to the fence, were all acts of ownership of the property. There were also acts that put the owner, Cruse, on notice that, between 1983 and 1997 (according to Cruse's own testimony) the land was being used by Respondent and that Respondent considered it his own. Therefore, Respondent met the open and notorious element.

■ For the purposes of adverse possession, exclusive possession means the person possesses the land for himself or herself, and not for others. *Whiteside,* 913 S.W.2d at 121. To meet this requirement, Respondent must show that he "wholly excluded" the owner from possession for the ten-year statutory period. *Flowers,* 979 S.W.2d at 470. However, sporadic use, temporary presence, or permissive visits by others, including the record owner, will not defeat the exclusive element. *Machholz–Parks v. Suddath,* 884 S.W.2d 705, 708 (Mo.App.1994). Respondent's burden is to show that the disputed land was neither open to the use of others nor jointly possessed with others. *Id.* In addition to the possessive acts by Respondent noted above, and Cruse's testimony that he did not exercise the same possessive acts, there was testimony that Cruse hunted deer on the property. Given the possessive acts noted and the display of "No Trespassing" signs, we agree that Respondent's possession was exclusive, and not defeated by Cruse or others sporadically hunting on the property.

■ The fifth and final element of adverse possession is that the possession be continuous for the statutory period of ten years. *Flowers,* 979 S.W.2d at 470. The ten years must be consecutive, uninterrupted, and without lapse. *Id.* However, it is not necessary that the ten years be the ten years immediately preceding the filing of the lawsuit. *Id.* Once the ten-year statutory period has run, the adverse possessor is vested with the title and the record owner divested. *Id.*

Four of the five surveys admitted into evidence indicate that the fence was in existence along the same fence line from 1982 through May 2000. This was bolstered by evidence, not only from Respondent, but others, that the fence, which went across both Property A and Property B, had been present in the same place since the late 1940s. As noted earlier, Cruse testified that he was aware of Respondent's possessory acts from 1983 until 1997. There was evidence to support a finding that the statutory period may have

begun as early as 1967, but there was substantial evidence to support the conclusion that the statutory period began in 1983 and that Respondent was vested with title to the disputed property ten years later in 1993. Thus, Respondent's title by adverse possession occurred prior to the time Appellants acquired title to either Property A or Property B. Therefore, evidence of a mobile home being placed by Respondent or his son in 1996 is not at issue, as the title by adverse possession had already occurred.

Appellants cite cases specifically relating to the fence. They are correct that acquiescence in the existence of a fence as a barrier, for convenience or for any reason other than as a boundary will not constitute an agreement that the fence represents the boundary line or establishes the fence line as the true line. *Conduff v. Stone*, 968 S.W.2d 200, 204 (Mo. App.1998). In addition, it is correct that although the location of a fence may be a factor in determining the boundary line, it is not conclusive in the absence of other findings. *Id.* at 205. In the case at bar, the existence of the fence was not the only evidence presented that the fence line represented the boundary. To the contrary, there was substantial other evidence presented of possessive acts by Respondent that were sufficient for the trial court's award of the 9.76 acres to Respondent pursuant to adverse possession.

The judgment is affirmed.

GARRISON, P.J., and RAHMEYER, J., concur.