Powell HUMPHREYS and Anita Humphreys, his wife, and Carl Sellers, Trustee under the Carl Sellers Revocable Living Trust Agreement dated 4/30/1999, Plaintiffs–Appellants,

v.

Michael WOOLDRIDGE, a single person, and Jones Glass Co., a Missouri Corporation, and Joshua Shane Willison and Traci J. Willison, his wife, Defendants–Respondents.

No. SD 30798.

Missouri Court of Appeals, Southern District, Division Two.

Sept. 3, 2013.

William S. Perkins, Thayer, MO, for appellants.

Steven A. Privette, Willow Springs, MO, for respondent.

JEFFREY W. BATES, J.

This appeal involves two recorded easements granted to Powell Humphreys, Anita Humphreys and the Carl Sellers Revocable Living Trust (hereinafter referred to collectively as Appellants) over adjacent property owned by Michael Wooldridge, Jones Glass Co., Joshua Willison and Traci

Willison (hereinafter collectively referred to as Respondents).[1] On appeal, Appellants challenge the trial court's denial of a request to remove a business sign located within the boundaries of one roadway easement (hereinafter, Easement A) and the trial court's ruling that one portion of another roadway easement (hereinafter, Easement B) had been extinguished by adverse possession.[2] Finding no error, we affirm the trial court's judgment.

## Standard of Review

"This Court must affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Grider v. Tingle*, 325 S.W.3d 437, 440 (Mo.App.2010). We presume that the trial court's judgment is correct, and Appellants bear the burden of proving it erroneous. *Id.*

We review questions of law *de novo*. *Strader v. Progressive Ins.*, 230 S.W.3d 621, 623 (Mo.App.2007). "The credibility of the witnesses and the weight to be given to their testimony is to be determined by the trial court, which is free to believe none, part or all of the testimony of any witness." *Ries v. Shoemake*, 359 S.W.3d 137, 139 (Mo.App.2012). On appeal, we defer to those credibility determinations. *See* Rule 84.13(d); *Reinbott v. Tidwell*, 191 S.W.3d 102, 107 (Mo.App. 2006).[3] For that reason, "we accept the evidence and reasonable inferences favorable to the prevailing party and disregard all contrary evidence." *Creech v. Noyes*, 87 S.W.3d 880, 884 (Mo.App.2002). Thus, "[t]he evidence and all reasonable inferences are viewed in the light most favorable to the judgment." *Burg v. Dampier*, 346 S.W.3d 343, 352 (Mo.App.2011). In addition, it is not this Court's function to retry the case. *Souci v. Souci*, 284 S.W.3d 749, 753 (Mo.App.2009). "An appellate court exercises extreme caution in considering whether a judgment should be set aside on the ground that it is against the weight of the evidence and will do so only upon a firm belief that the judgment was wrong." *Simpson v. Strong*, 234 S.W.3d 567, 578 (Mo.App.2007). The phrase "weight of the evidence" means its weight in probative value, rather than the quantity or amount of evidence. *Nix v. Nix*, 862 S.W.2d 948, 951 (Mo.App.1993). The weight of the evidence is not determined by mathematics, but depends on its effect in inducing belief. *Id.*

## Factual and Procedural Background

In May 1983, Danny Middleton and his wife Sheila Middleton, the Humphreys and Carl Sellers together purchased a large parcel of land lying east of U.S. Highway 63 in Oregon County. Later that year, they divided the land into tracts among themselves.

1. At various points in this opinion, Powell Humphreys and Anita Humphreys, who are husband and wife, will be referred to as the Humphreys. Joshua Willison and Traci Willison, who are husband and wife, will be referred to as the Willisons. For parties who share a surname, we will identify that person by his or her given name. No disrespect is intended.

2. Court's Exhibit 1, which was incorporated by reference into the judgment, referred to these roadway easements as Easement A and Easement B, respectively. We adopt that nomenclature on appeal. The proceedings below also involved another roadway easement, identified in the judgment as Easement C. None of the parties have challenged the trial court's rulings with respect to Easement C, so no further discussion of that easement is required.

3. All references to rules are to Missouri Court Rules (2013).

In September 1983, the Middletons conveyed several easements to the Humphreys and Sellers. At the same time, Sellers conveyed an easement to the Humphreys and the Middletons. Taken collectively, these reciprocal easements include a strip of land 40 feet wide that lies on the east right-of-way of Highway 63 and then bends east on or adjacent to an existing gravel road. Each conveyance was titled "Easement for Roadway" and stated that the grantor was conveying "the perpetual right to enter, erect, construct, and maintain a road over and across" the granted easement. Each document also stated:

> The [grantees] shall have the right of ingress and egress to and from said land to survey, erect, construct, maintain, inspect, patrol, rebuild and use the roadway constructed thereon, and SECOND PARTY may trim and/or cut and clear away any trees, limbs and brush on or adjacent to the above described land, whenever, in their judgment, such will interfere with the construction or use of said road.

Like the trial court, we will refer to these reciprocal easements collectively as Easement A. In 1993, Sellers sold a parcel of property to Michael Wooldridge (Wooldridge). Easement A lies within and burdens Wooldridge's property. In 1999, Sellers conveyed his interest in Easement A to the Carl Sellers Revocable Living Trust (the Sellers Trust). In 2005, Wooldridge conveyed a portion of his property, lying in the corner of the "L" shape created by Easement A, to Jones Glass Co. (Jones). Wooldridge had an ownership interest in Jones. As a result of that conveyance, a portion of Easement A lies within and burdens Jones' property.

The Middletons' September 1983 roadway easement conveyance also included another strip of land 40 feet wide that

joined the east end of Easement A, traveled east on or adjacent to the existing gravel roadway and then turned north. Like the trial court, we refer to this roadway easement as Easement B. Around 1984, the Middletons sold a parcel of property to Charles Case (Case). Easement B lies within and burdens that property.[4] In 2000, Case sold the same property to Anthony Clark (Clark). In 2004, Clark sold that property to the Willisons.

The Humphreys' property lies south of that owned by Wooldridge, Jones and the Willisons. The northern edge of the Humphreys' property abuts the southern boundary of Easement A, as well as the southern and eastern boundaries of Easement B.

Appellants' lawsuit, which was filed in March 2006, sought a declaration of the boundaries of Easement A and Easement B, ejectment and injunctive relief. The trial was conducted in July 2008, and additional evidence was presented to the court in December 2009. The court entered its judgment in May 2010. This appeal followed.

As noted above, Appellants challenge the trial court's denial of a request to remove a business sign located within the boundaries of Easement A and the trial court's ruling that one portion of Easement B had been extinguished by adverse possession. The evidence relevant to these points, viewed most favorably to the judgment, and the trial court's rulings on those issues are summarized below.

*The Sign Located on Easement A*

Sometime after March 2006, Wooldridge constructed an advertising sign for Jones. The sign was set on a concrete foundation in a grassy portion of Easement A that

4. In 1999, Sellers also conveyed his interest in Easement B to the Sellers Trust.

burdened Jones' land. As shown by Court's Exhibit 1 (which was a survey depicting the location of Easement A, the roadway and the sign) and a number of photographs of the scene, the sign was approximately 8–10 feet west of the northbound gravel roadway. Wooldridge testified that there was ample room for two cars to pass side-by-side on the roadway running between Jones' building and its sign. Powell Humphreys (Powell) admitted that the sign was not located on the traveled portion of the roadway.

The trial court decided that Easement A had not been abandoned or extinguished by adverse possession. The court also decided that "Wooldridge and Jones Glass had the right to construct the business sign within the easement." The trial court made a factual finding that the use of Jones' land to place the sign "is reasonable, does not interfere with [Appellants'] use and enjoyment of the easement, and neither destroys nor substantially limits the use of that easement." Therefore, the trial court denied Appellants' request for an order requiring the sign to be removed from Easement A.

*Easement B Adverse Possession Issues*

Case bought his property around 1984. The road on Easement B was already there. There was a fence running east and west on the southern edge of the Willisons' property that was within the boundaries of Easement B. Case testified that he had built this fence, which he intended to be permanent, in 1988 or 1989. According to Case, he was shown by Sellers where to place the corner fence post, and Sellers helped build part of the fence. Case denied that he received permission from Sellers or Powell to place the fence in that location. Case testified that, "[t]he purpose was put up the fence to know where my property went to, and to keep my cattle in." Case possessed the land up to the fence. Case believed he was placing the fence on the boundary of Easement B.

In 2000, Clark purchased the land from Case. In 2001, Clark was told by Sellers that he made a mistake as to the location of the fence, but Clark "discounted" what Sellers said. Clark believed that he owned the property to the fence, and he acted in accordance with that belief. Clark removed a section of the fence for a driveway and yard for the house he built on the property. The driveway extended past the fence to the roadway. He "mowed the grass to the road." He testified that, while he lived there, there was plenty of room for two cars to pass side-by-side on the gravel roadway.

Joshua Willison (Joshua) testified that he also used and possessed the property all the way up to the fence installed by Case, which included the northern 22 feet of Easement B. Joshua mowed it, weeded it, put in rocks to keep the soil from washing out in a flash flood, trimmed trees planted by Clark, and paved the Willisons' driveway "[u]p to the traveled portion of the road." During this time, no one complained to Joshua about his use of the easement, and he believed that two vehicles would not have any trouble meeting or passing each other on the roadway. In 2005 or 2006, Powell went to see Case and said the fence had been built in the wrong place.

In 2006, Joshua began placing posts for a new fence about seven feet south of the existing fence. At that point, Sellers and Powell contacted Joshua. Sellers asked Joshua to move the posts because "the corner was too tight." Joshua agreed that, after the new fence posts were installed, two vehicles meeting on the road could not pass side-by-side unless one drove off of the existing roadway onto the grass on the southern side of the easement.

The trial court decided that the portion of Easement B "between the Willison home and up to and including the existing Willison fence line has been extinguished by adverse possession."[5] The court found that the Willisons satisfied the elements for adverse possession and that Appellants "failed to establish permissive use." The court also ordered the Willisons "to remove the new fence posts erected between the existing fence and roadway."

## Discussion and Decision

Appellants present four points on appeal. Point III challenged the trial court's denial of Appellants' request to remove Jones' business sign from Easement A. Points I, II and IV challenge the trial court's ruling that a portion of Easement B was extinguished by adverse possession. For ease of analysis, we will address Appellants' points out of order.[6]

### Point III

Appellants' third point contains Subparts A and B. Because these subparts raise different issues with respect to the trial court's rulings on Easement A, we shall address them separately.

In Subpart A, Appellants contend the trial court erred as a matter of law by finding that Wooldridge's construction of Jones' sign "was a reasonable use of the property and did not interfere with Appellants' use because the sign was a permanent structure that did not exist prior to

the establishment of [Easement A] and had not been erected for a period of ten years or more." Appellants appear to be arguing that a servient tenant may not place any structures upon an easement for ingress and egress unless the requirements for adverse possession have been met. Missouri law does not support Appellants' argument.

An easement does not grant title to land; instead, it merely grants a right to use land for particular purposes. *St. Charles County v. Laclede Gas Co.*, 356 S.W.3d 137, 139 (Mo. banc 2011). In order for an easement to be exclusive, the language used to create it must exclude the servient tenant from participating in the rights granted to the dominant owner. *Grider v. Tingle*, 325 S.W.3d 437, 448 (Mo. App.2010); *Maasen v. Shaw*, 133 S.W.3d 514, 518 (Mo.App.2004). No such language is contained in the easements collectively comprising Easement A. Therefore, Easement A is non-exclusive. The owner of land burdened by a non-exclusive easement "retains the right of full dominion and use of the land affected by the easement; he may control and use his property in any way that does not substantially interfere with the reasonable use of the easement by the easement holder." *Earth City Crescent Associates, L.P. v. LAGF Associates–Mo, L.L.C.*, 60 S.W.3d 44, 46 (Mo.App.2001). For this reason, the owner of property subject to a non-exclusive

---

5. The trial court incorporated an exhibit into the judgment that provided a legal description of the portion of Easement B that had been extinguished by adverse possession.

6. In the "Preliminary Statement and Issues" segment of Appellants' Statement of Facts, they appear also to take issue with the trial court's finding that trees along Easement B planted by both Sellers and a prior owner of the Willisons' property did not interfere with Appellants' use of the easement. That same portion of Appellants' brief also took issue with the trial court's order against parking and placing barricades in the remaining portion of Easement B by all parties. Because these issues were not presented as claims of error in the points relied on, they will not be addressed. *See Moore v. Quirk*, 81 S.W.3d 717, 722 n. 4 (Mo.App.2002) (the argument should be confined to errors raised in the point, and matters outside the point are not preserved for review).

ingress and egress easement may erect structures on the premises which do not substantially interfere with the dominant tenant's enjoyment of the easement. *See id.* (hotel, which owned land subject to an easement for ingress and egress, could erect a sign on the easement unless it substantially interfered with the easement's enjoyment). It was Appellants' burden to prove that the sign substantially interfered with their use of Easement A. *See id.* Appellants' attempt to cast the trial court's ruling as one of law is simply incorrect. "Whether the use of a non-exclusive easement by the owners of the servient tenement substantially interferes with the dominant tenement's use of the easement is a question of fact to be determined by the trial court." *Burg v. Dampier,* 346 S.W.3d 343, 355 (Mo.App.2011). The trial court's ruling was not based upon Respondents proving adverse possession, nor was it required to be. *See id.* Subpart A fails.

In Subpart B, Appellants contend that reasonableness is not the standard that should be used to determine the extinguishment of an easement; rather, Respondents should have been required to present clear and convincing evidence that they were entitled to a prescriptive easement. This contention fails because it is based upon the false premise that the trial court extinguished Easement A. In point of fact, the trial court did no such thing. The judgment expressly stated that Easement A had not been extinguished by adverse possession. The court then ruled that the placement of Jones' sign within the boundaries of Easement A did not substantially interfere with Appellants' use of the easement for ingress and egress. That ruling was in accord with the applicable law, as set forth in *Earth City* and *Burg. See Earth City,* 60 S.W.3d at 46; *Burg,* 346 S.W.3d at 355. Appellants have cited no authority, and we are aware of none, which would have required the trial court to exclusively rely upon a prescriptive easement theory, using a clear and convincing standard of proof, to rule upon this issue. Subpart B also fails, and Point III is denied.

### Point I

Appellants' first point contains Subparts A, B and C. Because these subparts raise different issues with respect to the trial court's rulings on Easement B, we shall address them separately.

In Subpart A, Appellants contend the trial court erred by deciding the Willisons became the owners of a portion of Easement B by adverse possession. Appellants argue that there was no clear and convincing evidence to support the court's findings. That argument is contrary to controlling precedent. "The party claiming ownership by adverse possession has the burden of proving his claim by a preponderance of the evidence." *Watson v. Mense,* 298 S.W.3d 521, 526 (Mo. banc 2009). Subpart A fails.

In Subpart B, Appellants challenge the same ruling on the ground that the Willisons did not prove each element of adverse possession by substantial evidence. We disagree. Generally, an easement "gives the grantee an interest in the property of the grantor and thus runs with the land and is binding upon successive landowners." *Borton v. Forest Hills Country Club,* 926 S.W.2d 232, 234 (Mo. App.1996). A grantee's easement, however, can be extinguished by adverse possession. *Creech v. Noyes,* 87 S.W.3d 880, 885 (Mo.App.2002). To make that determination, a court applies the same principles that govern the acquisition of title by adverse possession. *Id.* "The burden is on the party claiming adverse possession to prove each element by a preponderance of the evidence." *Id.* at 885–86. The claim-

ant's possession must be: "(1) actual; (2) hostile and under claim of right; (3) open and notorious; (4) exclusive; and (5) continuous for a period of ten years." *Id.* at 885. "The years must be consecutive and need not be the ten years immediately prior to the filing of the law suit, but once the ten-year period has run, the possessor is vested with title and the record owner is divested." *Flowers v. Roberts,* 979 S.W.2d 465, 470 (Mo.App.1998).

Case's testimony, which the trial court found credible, established all of the elements necessary to prove adverse possession. Case built the existing fence, which he intended to be permanent, in 1988 or 1989. He denied that he received permission from Sellers to place the fence in that location. Case put the fence there to "know where [his] property went to" and to enclose his cattle within the fenced area. By doing so, Case excluded Appellants from using the portion of Easement B within the fence. Case testified that he possessed the land up to the fence. That possession continued for 11 or 12 years. Based upon Case's testimony, there was substantial evidence to support the trial court's determination that Appellants' easement interest over the property within the existing fence was extinguished by adverse possession during Case's ownership of the servient tenement. *See Buckner v. Castro,* 306 S.W.3d 655, 664 (Mo.App. 2010). As Case's successor in title, the Willisons acquired their property free of Appellants' easement with respect to the property inside the existing fence. *See id.; Flowers,* 979 S.W.2d at 470. Subpart B is denied.

In Subpart C, Appellants contend the trial court erred as a matter of law by changing the boundaries of a recorded easement without the consent of all of the dominant tenants. As noted above, a grantee's easement can be extinguished by adverse possession. *See Creech,* 87 S.W.3d at 885. This requires proof of hostile possession, *id.* at 885, not possession with consent. Subpart C fails, and Point I is denied.

### Point II

■■ Appellants' second point contains Subparts A and B. Because these subparts raise different issues with respect to the trial court's rulings on Easement B, we shall address them separately.

In Subpart A, Appellants contend the trial court erred because the judgment was against the weight of the evidence in determining that a portion of Easement B had been extinguished by adverse possession. Appellants acknowledge that the trial court's finding of adverse possession was based upon Case's testimony concerning his installation of the existing fence. They argue, however, that the court should not have relied upon that testimony because: (1) when Clark bought the property and built a residence thereon, he removed a portion of the existing fence to build a driveway to the new home; and (2) that act destroyed the useful purpose of the fence and precluded a finding of adverse possession in the Willisons' favor. We disagree. Case testified that the existing fence was in place for 11 or 12 years. Once the ten-year statutory period expired, Appellants' easement interest in the portion of Easement B within the existing fence was extinguished. *See Buckner,* 306 S.W.3d at 664; *Creech,* 87 S.W.3d at 885–86; *Flowers,* 979 S.W.2d at 470. As Case's successor in title, the Willisons acquired their property free of that part of Appellants' easement interest. *See Buckner,* 306 S.W.3d at 664; *Creech,* 87 S.W.3d at 885–86; *Flowers,* 979 S.W.2d at 470. The subsequent removal of a portion of that fence by Clark, long after Case acquired title, is irrelevant to the trial court's analy-

sis of the adverse possession issue. Therefore, the trial court's judgment is not against the weight of the evidence. Subpart A is denied.

In Subpart B, Appellants contend the trial court erred as a matter of law because Case's fencing of a portion of Easement B did not adversely affect Appellants' easement rights, in that the area was wooded. Appellants primarily rely upon *Litchfield v. Boogher*, 238 Mo. 472, 142 S.W. 302 (1911), and *Peasel v. Dunakey*, 279 S.W.3d 543 (Mo.App.2009), to support that contention.[7] In our view, each case is distinguishable.

*Litchfield* involved a number of 1891 easements that created a 10–foot private alley on unimproved property. *Litchfield*, 142 S.W. at 303. During the next ten years, there was no occasion to use the alley. *Id.* at 304. There also was no evidence of adverse possession up to that time. An iron fence had been built across the end of the alley, but "the testimony shows that in so building the fence there was no intention of obstructing the alley, or of asserting an adverse claim against its use as such." *Id.* at 304. Here, Case testified that he built the existing fence on what he believed was the northern boundary line of Easement B. He intended to place that fence on the boundary line and to possess and use the land inside the fence for his own purposes. The placement of a permanent fence in that location was incompatible with Appellants' use of the land within the fence line as a roadway. There was no evidence that Appellants did so during the 11 or 12 years Case owned the property. His testimony, which the trial court found credible, supports the court's decision that Appellants' easement interest for the portion of Easement B

within the existing fence was extinguished by adverse possession. *See Buckner*, 306 S.W.3d at 664. *Litchfield* is factually distinguishable and does not support Appellants' argument.

The same is true of *Peasel*. There, the deed to Peasel's property contained a 25–foot recorded easement for ingress and egress that ran about two-tenths of a mile along the southern boundary of Peasel's land. *Peasel*, 279 S.W.3d at 544. The southern part of the easement consisted of a roadway varying from 15–22 feet in width. The northern part of the easement consisted of grass, trees, fencing, berry patches and minimal signage. *Id.* When the Dunakeys tried to widen and pave the entire 25–foot road, Peasel contended that he had extinguished the northern part of the easement by adverse possession. *Id.* at 544–45. The trial court ruled for Peasel, but the eastern district of this Court reversed. The Court noted that, "to extinguish an easement by adverse possession, the landowner's use must be incompatible with the easement holder's right of use." *Id.* at 546. In determining that Peasel had not proven adverse possession, the appellate court noted that Peasel took no action to wholly exclude the Dunakeys from using the northern portion of the easement until the lawsuit was filed. *Id.* The same cannot be said here. As discussed above, Case's placement of his fence on what he believed to be the northern border of Easement B was incompatible with Appellants' right of use and did wholly exclude them from using that part of the easement for 17 years. Accordingly, *Peasel* is factually distinguishable and does not support Appellants' argument. Subpart B fails, and Point II is denied.

---

7. Appellants also cite *Spiegel v. Ferraro*, 73 N.Y.2d 622, 543 N.Y.S.2d 15, 541 N.E.2d 15 (1989) and *Castle Associates v. Schwartz*, 63 A.D.2d 481, 407 N.Y.S.2d 717 (1978). We have reviewed these opinions and find them unpersuasive.

*Point IV*

■ Appellants' fourth point contends the trial court's decision that Appellants failed to establish permissive use is against the weight of the evidence. They argue that Case's testimony showed the existing fence was put in place with the permission of Sellers.

■ It is true that "[p]ermissive use will not support a claim of adverse possession because hostile possession is lacking." *Brokhausen v. Waubansee,* 65 S.W.3d 598, 600 (Mo.App.2002). During Case's testimony, however, he specifically denied that he received Sellers' permission to place the fence in a location that encroached on Easement B. The trial court believed that testimony, as was its prerogative. *See id.* at 601; Rule 84.13(d). In assessing an against-the-weight-of-the-evidence argument, we must defer to the trial court's credibility determinations. *See Pearson v. Koster,* 367 S.W.3d 36, 44 (Mo. banc 2012); *Houston v. Crider,* 317 S.W.3d 178, 186 (Mo.App.2010). Appellants' invitation for us to re-evaluate the credibility of Case's testimony is not permitted by our standard of review. *See Pearson,* 367 S.W.3d at 44. Therefore, Appellants' against-the-weight-of-the-evidence argument fails. *See Houston,* 317 S.W.3d at 186. Point IV is denied.

The judgment of the trial court is affirmed.

DANIEL E. SCOTT, J. and WILLIAM W. FRANCIS, JR., P.J., Concur.

