Linden C. BARTLETT and Alice Bartlett,
his wife, Plaintiffs-Respondents,

v.

HUME–SINCLAIR COAL MINING
COMPANY, a corporation,
Defendant-Appellant.

No. 23264.

Kansas City Court of Appeals.

Missouri.

Nov. 6, 1961.

Belisle & McNabb, Butler, for appellant.

Ewing, Ewing, Ewing, Carter & Wight, Nevada, Mo., for respondents.

CROSS, Judge.

Plaintiff landowners sue defendant coal mining company for damages allegedly resulting from pollution of streams running through their farm lands caused by defendant's mining operations. Defendant appeals from a jury verdict and judgment in favor of plaintiffs in the amount of $1,600.

The allegations of the petition are, in substance, as follows: Plaintiffs, husband and wife, owned a 299 acre farm in Bates County. Two natural streams flowed through the farm, one bearing the name "Walnut Creek", the other designated only as the "east branch". Prior to 1951 those streams afforded a supply of pure water used for domestic and farm purposes and

were valuable rights and property of the plaintiffs. Defendant operated "strip" coal mines for several years prior to 1951. In the course of those operations, defendant operated a strip mine at a point west of plaintiffs' farm, and there erected a "tipple" and a coal processing and washing structure known as "Tiger Tipple". Defendant operated another such mine, "tipple", and processing and washing structure at the town of Foster, known as the "Foster Tipple". By means of those processing plants, defendant removed from the mined coal certain impurities consisting of coal dust, rocks and other materials containing chemical substances and compounds. The impurities were dumped or deposited by defendant upon its land in large quantities and over large areas. Through the years water accummulated in and became contaminated by the impurities and chemical substances so dumped and deposited. That water, after being contaminated, flowed from defendant's dumps and lands into streams which discharged into and polluted Walnut Creek and the east branch running through plaintiffs' farm. Those conditions existed in 1954 and 1955 until the filing of the petition. As a result, plaintiffs suffered loss and damage in that: their cattle and other livestock were sickened and depreciated in weight and value; plaintiffs lost the use of the water as a source of supply for livestock; they lost the use of valuable pasture and crop land; their trees were killed; the land adjacent to the streams was damaged and rendered useless; the entire farm was damaged and its value decreased. Plaintiffs prayed damages and that defendant be enjoined from permitting further pollution of the streams. Defendant's answer was a general denial.

The case was tried only as to the issue of damages. The trial court deferred any ruling on plaintiffs' prayer for injunctive relief until a later date. Plaintiffs produced evidence generally tending to prove the allegations of their petition. Such portions of the evidence as are necessary for

discussion of points raised by defendant will be appropriately noted.

■ Defendant first assigns that the trial court erred in failing to sustain its motion for judgment at the close of all the evidence because plaintiffs' evidence failed to show that defendant owned, leased, controlled or had any right of control over the land claimed to be the cause of the pollution. In our opinion the assignment is inappropriate because it is directed to matters outside of and foreign to the issue of defendant's liability for damages as pleaded, tried and submitted. The gravamen of the wrong attributed to defendant is *the commission of acts* creating the ditches and dumps and filling them with noxious substances which contaminated the streams—regardless of whether defendant was landowner, lessee, licensee or trespasser. The case was submitted on that theory. As stated in 66 C.J.S. Nuisances § 88, "It is not necessary in order to charge a person with liability for a nuisance that he should be the owner of the property on which it is created, but it is sufficient that he created the nuisance". Also see: Vaughn v. Missouri Power & Light Co., Mo.App., 89 S.W.2d 699; Brown v. City of Marshall, 228 Mo. App. 586, 71 S.W.2d 856. Plaintiffs' verdict-directing instruction required no finding that defendant "owned, leased, controlled or had the right to control" the land in question. The findings required were "that the pollution of plaintiffs' east branch was caused by drainage from *an area used by defendant Hume-Sinclair Coal Mining Company just east of Foster, Missouri, as a dump for refuse coal and coal impurities * * *"* (and identical findings with reference to Walnut Creek and Tiger Tipple). The record abounds with uncontradicted evidence that defendant alone operated the mines at Foster and Tiger, and *used* the respective "area" of each mine site "as a dump for refuse coal and coal impurities". Aside from the foregoing, it is inconsistent for defendant to contend on this appeal that there was no evidence it owned the land sites of Tiger and Foster mines

and dumps. During the trial both parties, defendant as well as plaintiffs, treated as an existing fact that defendant was the owner of the land—even presently. Defendant submitted instructions (given by the court) which amount to voluntary admissions that it owned the land. For example, defendant's Instruction No. 4 told the jury "that the burden of proof in this case is upon the plaintiffs to prove by the greater weight of the credible evidence (1) that harmful and polluted water did come from the defendant's land at the date charged in plaintiffs' petition;".

Defendant further contends that plaintiff failed to make a submissible case because "Plaintiffs' evidence failed to prove that Walnut Creek on plaintiffs' land was polluted, as that is a question for an expert and there is no such testimony".

■ Defendant argues that the testimony of lay witnesses is incompetent to establish the fact that a stream is polluted. We cannot accept that proposition as an established rule of evidence. Defendant cites one authority—93 C.J.S. Waters § 54. It is therein stated that "the question of whether the waters from [a stream] emitted disease germs is one for expert testimony". That statement has no present application because there is no controversy in this case concerning the presence or absence of specific disease germs. The cited authority contains additional statements materially in the disinterest of defendant on this point, quoted as follows on page 708: (1) "Pollution of a watercourse and the damages sustained as a result of the pollution, can be established by circumstantial evidence". (2) "Where other competent evidence shows that the water is polluted, proof by chemical analysis is not necessary". The case of Shelley v. Ozark Pipe Line Corporation, 327 Mo. 238, 37 S.W.2d 518, 523, clearly illustrates the permissible use of lay testimony to prove the contamination of water by a polluting substance—oil. The only evidence in that case tending to prove the presence of oil was the testimony of

plaintiff himself and other nonexpert witnesses. The defendant, in addition to general contradictory evidence, introduced the testimony of two experts. A Drury College geology professor and an experienced chemist both made technical tests and testified they found no evidence of oil in the water. The Supreme Court said: "We are much impressed with the evidence of the defendant on the merits of the case. Since, however, the record contains substantial evidence from which the jury could find that oil had escaped from defendant's pipe line after January, 1922, and contaminated the water on plaintiffs' land, we must defer to the finding of the jury". In the present case, plaintiffs produced evidence that: the water turned yellow; the livestock wouldn't drink it; timber along the branch died; the water was bitter and smelled—"a sort of sulphur smell"; "it stunk like sulphur"; fish in the stream died; "in '55 it killed them by the wagon loads"; the water has been blue, brown, red, yellow, "and just a terrible looking stuff", and the bottom of the creek was covered with precipitates; the water would kill crops, rust out wire faster than usual and burn a man's hand; there is scum on the water, even in the winter time. The narrated evidence justifies the submission of the pollution issue to the jury.

Defendant next urges that plaintiffs' case was not submissible as for temporary damages because there was no evidence that the "nuisance" was abatable. Therefore, defendant argues, the court should have treated the nuisance as permanent and submitted the case upon the basis of permanent damages—to be recovered in one action.

■ Defendant fails to take into account one other factor necessary for our consideration in determining the proper measure of plaintiffs' damages—i. e., whether the *injury* caused by the nuisance is temporary or permanent. 66 C.J.S. Nuisances § 175, states the following rule:

"Where the injury is temporary or remediable, the measure of damages is not the depreciation of the value of the property, but the depreciation of the rental or usable value during the continuance of the injury * * *; and damages as for a permanent injury cannot be allowed where the injury is temporary or the nuisance removable". The quoted rule is observed by Missouri courts. See Bollinger v. American Asphalt Roof Corporation, 224 Mo. App. 98, 19 S.W.2d 544, and Shelley v. Ozark Pipe Line Corporation, 327 Mo. 328, 37 S.W.2d 518. So, even if the evidence tended to establish that the nuisance was permanent, and the trial court so found, it still would have been error to submit the case on a measure of permanent damages (depreciation in value of the freehold) *unless there was substantial evidence that the injury and damages sustained by plaintiffs were also permanent.* There is no such evidence in the record. On the contrary, the evidence points only to the sustention of temporary and special damages including: the loss of the streams for farming purposes; the inconvenience suffered and extra labor required; loss of the recreational use of one of the streams; loss of and damage to livestock; loss of use of pasture lands; damage to land and trees; extra expenses incurred in providing a water supply. Plaintiffs' measure of damage instruction was based on and incorporated the enumerated items of loss and damage (amounting to loss of rental value and special damages) and permitted the jury to return a verdict therefor. We believe the instruction correctly submitted the issue of damages and that the trial court committed no error by giving it.

■ Defendant in its remaining points complains of plaintiffs' instructions, but fails to incorporate them in its brief or to state their substance. See Civil Rule 83.05, V.A.M.R. It is first urged, without particularization, that those instructions, three in number, are confusing and misleading. The point is not preserved for review.

Next, complaint is directed against plaintiffs' Instruction No. 1 on the ground that it misstates the law, for the alleged reason it tells the jury that defendant is liable for all damages suffered by plaintiffs, without regard to the effect of pollution caused by other parties. Instruction No. 1 is an abstract statement of law (not objected to because abstract in form) which incorporates the statement " * * * that it is no defense to an action for pollution that others may also be polluting the same stream". Defendant admits that it is no defense that other parties may pollute a stream, but insists its liability is for only such damages as are proven by plaintiffs to be the result of defendant's acts. In this regard, defendant has no meritorious ground of complaint. Plaintiffs' verdict-directing instruction (No. 2) specifically requires a finding that the pollution was caused by defendant's dump areas. Additionally, defendant's own instruction, No. 4, informs the jury that plaintiffs must prove "that the defendant caused said water to be polluted" in order to recover a verdict.

Defendant also contends that plaintiffs' instructions numbered 2 and 3 are misstatements of the law, but says of them only that "each constitutes a misstatement of the law of abatable nuisance and the elements of damages properly submissible thereunder". Again, no determinable question is raised.

Defendant's final contention is that plaintiffs' instructions and defendant's instructions are in conflict and submit contrary theories of law. We are not informed by defendant how or in what manner any conflict exists. We are not told what contrary theories of law defendant claims were submitted in the instructions. The point raises nothing for our decision.

The judgment is affirmed.

All concur.