Daniel E. BURG and Kris A. Burg, Respondents,

v.

Marsha C. DAMPIER and Sabrina Graham, Appellants.

No. WD 73186.

Missouri Court of Appeals, Western District.

July 26, 2011.

346

Thomas M. Schneider, Columbia, MO, for appellants.

Garrett S. Taylor, Columbia, MO, for respondents.

Before Division Two: THOMAS H. NEWTON, Presiding Judge, CYNTHIA L. MARTIN, Judge and GARY D. WITT, Judge.

CYNTHIA L. MARTIN, Judge.

This case involves a dispute over the use of a non-exclusive roadway and utility easement. Daniel Burg ("Mr. Burg") and Kris Burg ("Mrs. Burg") (collectively the "Burgs") own a tract of residential property benefitted by the easement. The easement runs across a tract of

property owned by Marsha Dampier ("Dampier"), but occupied by Sabrina Graham ("Graham") (collectively the "Appellants") pursuant to a contract for deed. Appellants appeal from the trial court's judgment, entered following a trial to the court, ordering Appellants to remove all obstacles and encroachments from the easement area, awarding the Burgs $5,000 in damages for nuisance created by the Appellants, invalidating a recorded trespass notice filed of record, and enjoining Appellants from engaging in future conduct which impairs or obstructs the Burgs' use, enjoyment, and maintenance of the easement. We affirm.

## Statement of Facts and Procedural History[1]

On March 30, 1993, the Burgs acquired a 44–acre tract of real property in Boone County, Missouri. The property was a part of an area that had been prepared for development ("Development Area") by Scott Schulte and Hardeep Bhullar ("Developers"). The Development Area had been divided into Tracts 1 through 10 pursuant to a recorded survey. Access to the Development Area was generally afforded by North Tucker School Road, a public roadway running north/south along a portion of the eastern boundary of the Development Area. However, all of the tracts were not adjacent to North Tucker School Road. Thus, the Developer created a private roadway designated as Tract 1 which connected to North Tucker School Road, and which ran through the center of the Development Area in a roughly east to west direction. The record suggests that the conveyance deed from the Developers to the initial purchaser of each of Tracts 2 through 10 included the grant of a perpet-

ual, non-exclusive, roadway and utility easement over Tract 1.

The 44–acre tract the Burgs purchased was Tract 9. Tract 9 does not have direct access to North Tucker School Road. Tract 9 lies north of Tract 1. However, only the south one-third of the western boundary of Tract 9 touches on Tract 1. Tract 10 is located immediately south of Tract 9, and sits in between Tract 9 and Tract 1. Tract 1 runs along the entire southern and western boundaries of Tract 10.

The Burgs purchased Tract 9 intending to build a home on the site some day. Tract 9 is heavily wooded and has topographical issues, including a gorge, which limit where a home can be easily built. When the Burgs purchased Tract 9, the general warranty deed from the Developers afforded them a perpetual, nonexclusive roadway and utility easement over and across Tract 1. Because the Burgs were interested in someday building a home in the southeast corner of Tract 9 (opposite the location where Tract 9 touched upon Tract 1), they negotiated with the Developer for the grant of an easement across Tract 10 to permit access to Tract 1 at the southern property line of Tract 10. The easement the Developers granted over Tract 10 was included in the Burgs' general warranty deed, and was described as follows:

> Together with a 50 feet wide perpetual, nonexclusive roadway and utility easement running generally north-south across the above-described Tract 10 with the west line of said easement area being described as follows: [*metes and bounds description of easement deleted*]. This easement shall be for the use and benefit of the present and future owners of Tract 9 of the aforesaid Survey recorded in Book 702, Page 646,

---

1. We view the facts in the light most favorable to the trial court's judgment. *Asamoah–Boa-*

*du v. State,* 328 S.W.3d 790, 793 (Mo.App. W.D.2010).

Deed Records of Boone County, Missouri. *The parties to this Deed and their successors and assigns agree (a) that no cross-fencing, gates or other obstructions shall be placed in the easement area, (b) that the parties shall contribute toward the repair and maintenance of the roadway in the easement area in proportion to their respective usage with other users of the roadway in the easement area, and (c) that this easement shall automatically terminate if and when the easement area is dedicated and accepted by Boone County, Missouri as a public road.*[2]

(Emphasis added.)

In February 2001, Dampier purchased Tract 10. She did not purchase Tract 10 from the Developer, as there had been intervening owners of the Tract. Dampier's conveyance document indicated that her legal interest in Tract 10 was subject to easements and restrictions of record.

In August 2002, the Burgs decided to move forward with their plans to build a home in the southeast corner of Tract 9. At the time, a fence was in place on the northern and southern boundaries of Tract 10, and thus across the northern and southern boundaries of the easement over Tract 10. The Burgs sent Dampier a letter requesting that she remove the fence blocking the north and south ends of the easement, along with other obstacles and encroachments located in the easement.[3] The letter advised that if Dampier did not remove the fence, obstacles, and encroachments, the Burgs would do so. Dampier

did not respond to the letter. Mr. Burg cut the fences which were blocking the northern and southern ends of the easement.

Dampier responded by filing a lawsuit against the Burgs on August 12, 2002, alleging that the easement was invalid and void, and that the Burgs were trespassing on her property through use of the easement. Dampier also placed signs around the area notifying neighbors of the lawsuit. The petition was dismissed by Dampier in mid-September 2002.

In 2003, the Burgs installed a 9-1/2 foot wide gravel driveway down the middle of the 50–foot wide easement.

In 2004, Graham began living on Tract 10 pursuant to an agreement to purchase the property from Dampier.[4] Graham kept horses, stabled horses for other individuals, and gave riding lessons, on Tract 10.

From at least 2002 until sometime in 2007, the Burgs maintained the entire 50–foot wide easement over Tract 10. This included maintenance of the gravel drive, mowing of the grass on either side of the gravel drive, and other basic maintenance.

In 2007, the Burgs began having conflicts with Graham regarding use of the easement. Mrs. Burg testified that she called Graham to inform her that the mowing season was about to start, and requesting that Graham remove trash she had placed in the easement. Graham then approached Mr. Burg to see if he could discharge the mowed grass sideways onto the

---

**2.** The parties agreed during oral argument that the easement had been crafted in this manner because the Burgs also wanted to retain the ability to further subdivide Tract 9 which would have required an area 50 feet in width to construct a public roadway to the prospective subdivision based on Boone County, Missouri's development requirements.

**3.** The record indicates Dampier had located two electric waterers on the easement for use by livestock.

**4.** Graham and Dampier entered into a contract for deed permitting Graham to pay for Tract 10 by installments. Dampier remained the record owner of Tract 10, however.

portion of Tract 10 outside the easement area so her horses could graze on the cut grass. Mr. Burg advised Graham he could not do so as his brush hog discharged grass out the back. Graham then called Mrs. Burg to see if she could mow the easement. Mrs. Burg advised Graham she did not like being put in the middle of the mowing issue as Mr. Burg had already told Graham he wanted to continue to mow the easement. Mrs. Burg testified that Graham was "very angry" after this phone call.

In April 2007, shortly after this conversation, Graham mowed a portion of the easement. A few days later, Mr. Burg mowed the easement. Graham called the Boone County Sheriff's department ("Sheriff's Department") and reported that the Burgs were trespassing. Graham also claimed that Mr. Burg tried to run Graham and her boyfriend over with the brush hog. No formal charges were filed following the Sheriff's Department's investigation of Graham's accusation.

The Burgs' issues with Graham continued throughout 2007. The Burgs testified that Graham's horses frequently entered their yard, and would eat portions of their garden while leaving manure on their property. Graham began to repeatedly place items in the easement area including trash, hay bales, horses, horse trailers, and parked vehicles. The Burgs testified that on several occasions these items were placed directly on the gravel driveway, requiring them to drive over the grass to reach Tract 9. The Burgs testified that this was especially dangerous in inclement weather because ruts had formed outside of the gravel driveway. Graham and/or Dampier also installed and maintained a fence along either side of the easement area which encroached at various points

into the easement area by as much as 11 feet.

The Burgs wrote Graham a letter in September 2007, requesting that the obstacles and encroachments in the easement area, including the fence, be removed. Graham did not honor the Burgs' request, and continued to place obstacles and encroachments in the easement area.

In September 2007, and shortly after receiving the Burgs' letter, Graham called the Sheriff's Department and reported that one of her horses had been stolen. Graham claimed that Mr. Burg shot and killed the horse. The Sheriff's Department concluded that the horse ran through several barbed wire fences and injured herself. The investigating officer "did not observe any visible injuries which appeared to be from any type of weapon."

The Burgs filed suit against Graham and Dampier in January 2008, in an effort to resolve the disputes over their right to use the easement over Tract 10.

In June 2008, Graham forwarded the Burgs a copy of a letter sent by Graham and Dampier to their counsel, Tom Schneider ("Schneider").[5] Among other things, the letter advised that Graham and Dampier wanted to purchase Tract 1 to force the Burgs to access Tract 9 in a different way.

In August 2008, a no-trespassing sign was placed on Tract 10 warning "No mowing or other actions authorized. Civil action pending. All actions considered trespass and/or theft." The notice listed Graham's name and telephone number.

In August 2008, Graham sent a letter to the Burgs on behalf of herself and Dampier warning the Burgs that the easement had been negated, and that while the law-

---

5. Schneider had been Dampier's attorney in 2002, when Dampier filed suit against the

Burgs seeking to invalidate the easement over Tract 10.

suit was pending, the Burgs needed to stay exclusively on the gravel driveway. The letter indicates that a copy was sent to Dampier.

On October 25, 2008, Mrs. Burg entered the easement on her riding mower. Graham began yelling and cursing, warning Mrs. Burg to "stay off of my f* * *ing grass." When Mrs. Burg attempted to drive her mower forward, Graham stepped in front of the mower and put her foot under the front tire. Graham then yelled "I'm going to get x-rays and you're going to pay."

On October 28, 2008, Graham filed an adult abuse/stalking petition against the Burgs seeking an Ex Parte Order of Protection. Graham alleged that Mrs. Burg had run over her with a mower, that the easement over Tract 10 was negated, that the Burgs had intentionally destroyed fences on her property, that the Burgs were endangering her livestock, that the Burgs had shot and killed one of her horses, and that Mr. Burg had swerved in an attempt to hit horse riders in the easement. The Burgs denied all allegations in the petition, but upon advice of counsel, permitted the entry of an order which directed the parties to stay away from each other for six months.

On October 30, 2008, and again on October 31, 2008, Graham called the Sheriff's Department alleging that the Burgs were trespassing. The Burgs testified that a similar call was made every time they mowed the easement area.

In September of 2009, Graham approached Mark Stevenson ("Stevenson"), the owner of Tract 1.[6] Stevenson testified that Graham approached him claiming that the Burgs were trespassing on her property and harassing her. Graham asked Stevenson to sign a Trespass Notice and Warning ("Trespass Notice") notifying the Burgs that they had no right to use Tract 1. The Trespass Notice was prepared by Graham's and Dampier's attorney, Schneider. Stevenson signed the Trespass Notice, apparently unaware that the Burg's had a recorded easement permitting their use of Tract 1. Stevenson was also unaware that the Burgs had a recorded easement over Tract 10. Stevenson signed the Trespass Notice because Graham told him that doing so would solve her problems with the Burgs. Graham and Dampier then caused the Trespass Notice to be recorded against Tract 9. Mr. Burg testified that the recordation of the Trespass Notice reduced the value of Tract 9 to $0.00, as no one would purchase Tract 9 unless there was a right to use Tract 1 to access North Tucker School Road.

Graham filed a second adult abuse/stalking petition against Mr. Burg in September 2009. Graham alleged that Mr. Burg had been tearing down her fences, interfering with her livestock and business, and that Mr. Burg purposefully tried to scare riders in the easement.

In October 2009, the Burgs filed a second amended petition. Count I sought to eject Dampier and Graham to the extent either or both were placing obstacles in the easement area. Count II alleged private nuisance, claiming that the actions of Dampier and Graham constituted a private nuisance defeating the Burgs' ability to use and enjoy the easement area. Count III alleged abuse of process against Graham in connection with the two efforts to secure Ex Parte Orders of Protection. Count IV alleged that Dampier and Graham directly, or through their agent Tom Schneider, slandered the Burgs' title by

---

6. Somewhere along the way, and in a manner that is not fully explained in the record, ownership of Tract 1 was obtained by Just Waved, L.L.C. Stevenson is the sole member of Just Waved, L.L.C.

orchestrating the recordation of the Trespass Notice signed by Stevenson. Count V alleged that Dampier and Graham engaged in a civil conspiracy to prevent the Burgs from using Tract 1 to reach the easement on Tract 10.

The Appellants filed an answer to the second amended petition. The Appellants alleged as affirmative defenses that the easement over Tract 10 had terminated or been extinguished by adverse possession and/or non-use. The Appellants alleged in the alternative that the Burgs' right to use the easement was limited to the 9–1/2 foot wide gravel driveway. The Appellants alleged that the Tract 10 easement had been extinguished because of the Trespass Notice prohibiting the Burgs' use of Tract 1. The Appellants *did not* allege that they acquired their respective interests in Tract 10 without actual or constructive notice of the recorded easement over Tract 10.

Appellants also asserted joint counterclaims for adverse possession; for ejectment of the Burgs from Tract 10 and Tract 1; for property damage and related loss of income due to the Burgs 2002 removal of the fence on the northern property line of Tract 10; and for damage to two permanent electric waterers located in the easement area. Graham separately asserted additional counterclaims for trespass, assault and battery, and to recover the cost of a survey.

A bench trial was held on June 15 and June 16, 2010. The Burgs testified that they had become fearful based on all of the aforesaid incidents. Mrs. Burg will no longer walk her dog across the easement to collect her mail. Mr. Burg testified that a wedding which had been planned on Tract 9 was cancelled because the Burgs feared having guests use the easement over Tract 10. The Burgs testified that their ability to use and enjoy their property has been substantially affected by the Appellants' actions.

The trial court heard testimony from Dampier, Graham, and five witnesses for the defense. Dampier acknowledged that she purchased Tract 10 in 2001, subject to easements of record. Dampier identified the conveyance deeds in the chain of title for Tract 10 back through the point of conveyance from the Developers to Teresa Robinson ("Robinson") and Carol Maher ("Maher"). The deed from the Developers to Robinson and Maher expressly reserved the 50–foot wide perpetual, non-exclusive roadway and utility easement in favor of Tract 9 and running generally north and south across Tract 10, using the same language to describe the easement as appeared in the general warranty deed from the Developers to the Burgs. Each deed thereafter in the chain of title for Tract 10 excepted easements of record from the title conveyed. Notwithstanding, Dampier testified that she did not believe the easement to be valid, and confirmed that she had several discussions with Graham about her belief that the easement was not valid.

On October 8, 2010, the trial court entered its judgment ("Judgment"). The Judgment found in favor of the Burgs and against Dampier and Graham on Count I (ejectment) and ordered Dampier and Graham to "remove all obstacles and encroachments within the easement area across Tract 10 ... and to refrain from any future such encroachments which interfere with [the Burgs'] use and enjoyment of the easement."

The Judgment found in favor of the Burgs and against Dampier and Graham on Count II (private nuisance), and ordered Dampier and Graham "to refrain from actions which impair or obstruct [the Burgs] in their use and enjoyment of their easement across Tract 10 and conduct which serves to threaten, harass, annoy, or burden [the Burgs] in their maintenance, use, and enjoyment of the easement area."

The Judgment also awarded the Burgs a $5,000.00 monetary judgment on Count II "as damages for the nuisance created by [Dampier and Graham]."

On Count IV (slander of title), the Judgment found the Trespass Notice was not legal or valid and did not constitute a cloud on the title and rights of the Burgs to the easement granted across Tract 1.

The Judgment found in favor of Graham and Dampier on Counts III and V (abuse of process and civil conspiracy, respectively).

The Judgment found in favor of the Burgs as to all of the counterclaims asserted by Dampier and Graham.

The Appellants filed this timely appeal.

## Issues on Appeal

Appellants raise six points on appeal. All six points relate to the trial court's Judgment on Count II, the private nuisance claim.

In Point One, Appellants maintain that the trial court's entry of an injunction ordering them to refrain from conduct threatening, harassing, annoying, or burdening the Burgs' maintenance, use, and enjoyment of the easement erroneously impairs their right to use the easement as owners of the servient tract, Tract 10. In Point Two, Appellants maintain that the trial court's order that they refrain from conduct threatening, harassing, annoying, or burdening the Burgs' maintenance, use, and enjoyment of the easement is too vague and overbroad to be enforceable. In Point Three, Appellants maintain that there was no substantial or competent evidence to support an award of damages in the amount of $5,000.00 for nuisance. In Point Four, Appellants maintain that the trial court erred in entering judgment in favor of the Burgs for nuisance because none of the acts complained of involved Appellants' "use of their property or any instrumentality, nor did the complained-of

acts interfere with [the Burgs'] use and enjoyment of their property." In Point V, Appellants maintain that the trial court erred in entering judgment in favor of the Burgs for nuisance because there was no evidence that permanent or temporary obstacles located in the easement area interfered with the Burgs' ingress and egress. In Point VI, Appellants maintain that the trial court erred in entering a joint and several judgment for nuisance damages against Graham and Dampier because "none of the complained-of acts (except for maintenance of the 'obstacles') were alleged to have been done by [Dampier], nor could such acts be imputed to her."

Appellants have not contested the trial court's judgment in favor of the Burgs for ejectment (Count I), the trial court's declaration of the invalidity of the Trespass Notice (Count IV), or the trial court's rejection of the Appellant's counterclaims.

## Standard of Review

In reviewing a court tried case, we will affirm the judgment of the trial court unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The evidence and all reasonable inferences are viewed in the light most favorable to the judgment. *Asamoah–Boadu v. State,* 328 S.W.3d 790, 793 (Mo.App. W.D.2010). We will defer to the trial court's credibility determinations. *Id.*

## Point One

In their first point on appeal, the Appellants maintain that the trial court's entry of an injunction directing that they refrain from conduct threatening, harassing, annoying, or burdening the Burgs' maintenance, use, and enjoyment of the easement erroneously impairs their right to use the

easement as owners of the servient tract, Tract 10. Because we conclude that the Judgment on Count II (private nuisance) did not impair the Appellant's right to use the easement over Tract 10 in a manner that does not substantially interfere with the rights of the Burgs as expressly described in the written grant of the easement, we disagree.

■ An easement is a non-possessory interest in the real estate of another. The interest is not an interest in title, but confers a right of one person to use the real estate of another for a general or specific purpose. *Farmers Drainage Dist. of Ray Cnty. v. Sinclair Refining Co.*, 255 S.W.2d 745, 748 (Mo.1953). Though the right conferred by an easement is not a possessory right, it is nonetheless a right that can be enforced at law or in equity.

■ Easements are either "appurtenant" or "in gross." An easement appurtenant creates a dominant tenement (the land which benefits from the easement) and a servient tenement (the land which is burdened by the easement). *Gardner v. Maffitt*, 335 Mo. 959, 74 S.W.2d 604, 606–07 (1934). An easement in gross conveys a personal interest in or right to use the land of another independent of ownership or possession of land, *Henley v. Continental Cablevision of St. Louis Cnty., Inc.*, 692 S.W.2d 825, 827 (Mo.App. E.D.1985), and thus lacks a dominant tenement. *Three–O–Three Invs., Inc. v. Moffitt*, 622 S.W.2d 736, 739 (Mo.App. W.D.1981).

Here, the easement over Tract 10 granted by the Tract 9 general warranty deed was an easement appurtenant. It created a dominant tenement (Tract 9) which will perpetually benefit from the easement over the servient tenement (Tract 10).

The easement was created for a specific purpose—for roadway and utility use.

■ A "roadway" easement has been construed to afford a right of ingress and egress over a servient tenement. *Beiser v. Hensic*, 655 S.W.2d 660, 662 (Mo.App. E.D.1983). Here, the record supports such a construction, as the Burgs negotiated for the easement over Tract 10 to assure reasonable ingress and egress access to Tract 1 from the southeast corner of Tract 9 where they hoped to build a home. "[W]here a roadway easement is created by deed, the owner of the dominant estate has the right to maintain the easement in a condition for passage, and the owner of the servient estate is under no obligation to maintain or repair." *Schluemer v. Elrod*, 916 S.W.2d 371, 374–75 (Mo.App. S.D. 1996). Thus, by virtue of the grant of a perpetual, non-exclusive, 50–foot wide roadway easement over Tract 10, the Burgs had the express right to utilize the easement for ingress and egress between Tract 9 and Tract 1, and had the further right (if not the obligation) to mow and otherwise maintain the easement.

■ Though the Appellants contested the validity of the easement at trial, they do not contest on appeal the trial court's determination that Tract 9 was granted a perpetual roadway and utility easement over Tract 10, and that said easement remains in force and effect.[7] Instead, the Appellants argue in their point relied on that the trial court's entry of an injunction ordering them to refrain from conduct impacting the Burgs' use, enjoyment and maintenance of the easement has the effect of depriving them of any right to use the easement. The Appellants further assert *in the argument portion of their brief* that

7. Although the Judgment does not reflect express findings to this effect, such findings are necessary implications of the trial court's entry of Judgment in favor of the Burgs on Count I and Count II of their second amended petition.

the easement should be narrowed by judicial fiat to the width of the 9–1/2 foot gravel driveway installed by the Burgs.

■ We address the second argument first. Appellants Point Relied On One asserts no claim of error, directly or indirectly, based on the trial court's purported failure to modify the express grant of an easement over Tract 10 by narrowing the easement from 50 feet to 9–1/2 feet-affirmative relief sought by Appellants at trial. Arguments advanced in the brief but not raised in the point relied on are not preserved, and will not be addressed by this court. Rule 84.04(e); *Rea v. Moore*, 74 S.W.3d 795, 799 (Mo.App. S.D.2002) (holding that point relied on describes the boundaries of appellate review). Thus, Appellants' request, raised in the argument portion of their brief, that we remand this case with instructions directing the trial court to "redraw" the easement to one of a 9–1/2 foot wide dimension co-extensive with the gravel drive is not preserved for appellate review.

■ Even were we to reach this non-preserved issue, Appellants would not prevail. There is authority for judicial crafting of the contours and dimensions of an otherwise unspecified roadway easement based on a determination of what is reasonably necessary to permit the specific use intended by the easement—ingress and egress. *See, e.g., DiPasco v. Prosser*, 364 Mo. 1193, 274 S.W.2d 279, 284 (1954). However, Appellants direct us to no authority empowering a court to craft the contours and dimensions of a roadway easement where the grant of the easement is in writing, and is expressly described by dimension and by a specific metes and bounds location. In fact, "where the terms of the easement are reduced to writing the terms of the grant ... prevail." *Bedard v.*

*Scherrer*, 221 S.W.3d 425, 428 (Mo.App. W.D.2006). Here, the grant of the easement over Tract 10 was reduced to writing, and specifically identified both the dimension of the easement as well as its precise metes and bounds location on Tract 10. The express terms of the grant of the easement over Tract 10 prevail, affording the trial court, based on the facts and circumstances in this case, no authority to "rewrite" the grant of easement.

Appellants' reliance on *Baum v. Glen Park Properties*, 660 S.W.2d 723 (Mo.App. E.D.1983) [8] for authority to rewrite the easement over tract 10 is misplaced. In *Baum I*, Glen Park Properties received a deed from Baum that conveyed 4.1 acres of property "subject to an easement for road purposes over a strip of land forty (40) feet wide lying northwest and adjacent to the following described line. . . ." *Id.* at 724. Baum remained the owner of the balance of an adjacent 25.83 tract. *Id.* The easement provided the only access to the property held by Baum. *Id.* Baum sued Glen Park Properties to prohibit maintenance and construction of certain obstructions in the forty foot wide easement tract. *Id.* The evidence suggested that although Baum held a forty foot wide easement, her use of the easement for roadway purposes was limited to a gravel lane she employed to access her property. *Id.* at 726. Baum also testified she had plans to widen the gravel lane to permit ingress and egress for farm equipment. *Id.* at 726–27. The Eastern District did not order the forty foot wide easement expressly granted to Baum to be redrawn or narrowed. Instead, the court remanded the case and directed the trial court to "determine a reasonable width sufficient for road purposes for motor vehicles and farm equipment" and directed that Glen Park Proper-

8. We refer to this case as *Baum I* to avoid confusion as following remand, a second ap-

peal was taken resulting in a second reported opinion with the identical case name.

ties could not interfere with Baum's use and enjoyment of the designated roadway. *Id.* at 727. As to the balance of the easement beyond that reasonably necessary for the roadway, the Eastern District acknowledged the *general* principal that "[a]n owner of property subject to an easement of ingress and egress may erect structures on the premises or beneath the surface which do not interfere with the enjoyment of the easement." *Id.* at 726 (citing *Reutner v. Vouga*, 367 S.W.2d 34, 42 (Mo.App.1963)). Thus, though *Baum I* recognizes that, *in general*, a servient tenement owner remains entitled to use a non-exclusive roadway easement in any manner that does not interfere with the dominant tenement owner's enjoyment of the easement, *Baum I* does not, as suggested by Appellants, support the proposition that a court can unilaterally rewrite the express grant of an easement by deed.[9] Rather, *Baum I* supports the proposition that determining what constitutes the reasonable use of a non-exclusive roadway easement by a servient tenement will be influenced by whether the use is upon the portion of the easement area actually being used by the dominant tenement for ingress and egress.

▬▬ The result in *Baum I* does lead us naturally to the argument advanced by Appellants which was preserved in their point relied on—whether the trial court's injunction ordering that they re-

frain from conduct interfering with the Burgs' use, enjoyment and maintenance of the easement deprives them of any right to use the easement. The Appellants correctly point out that the easement over Tract 10 is a *non-exclusive* roadway and utility easement. Generally, where an easement is non-exclusive, the owners of the servient tenement may use the easement as long as that use does not substantially interfere with the dominant tenement's reasonable use of the easement. *Maasen v. Shaw*, 133 S.W.3d 514, 518–19 (Mo.App. E.D.2004); *Tsevis v. J & F Indus., Inc.*, 51 S.W.3d 91, 93 (Mo.App. E.D. 2001). Whether the use of a non-exclusive easement by the owners of the servient tenement substantially interferes with the dominant tenement's use of the easement is a question of fact to be determined by the trial court. *Beiser*, 655 S.W.2d at 663. In conducting such an inquiry, our courts will look to whether the servient tenement's use of the easement made the easement less useful or convenient. *Id.*

Employing this general test, and considering the substantial and competent evidence regarding the conduct of Dampier and Graham, we easily conclude that the trial court correctly held that Dampier and Graham substantially interfered with the Burgs' maintenance, use, and enjoyment of the easement. Clearly, Dampier and Graham were not happy about the presence of

9. On remand, the trial court "found that twenty (20) feet of the easement should be used for road purposes and the roadway should be located on the northern portion of the land." *Baum v. Glen Park Properties*, 692 S.W.2d 831, 832 (Mo.App. E.D.1985) ("*Baum II*"). The trial court's action in this regard did not modify the deed granting the easement, but simply designated that portion of the forty foot wide easement wherein Glen Park Properties would be required to avoid *any* conduct or activities interfering with Baum's use and enjoyment of the designated roadway, as per the guidance of *Baum I*, 660 S.W.2d at 727. Though *Baum II* has been

subsequently characterized as having "established" the easement as a twenty foot road, *Tsevis v. J & F Indus., Inc.*, 51 S.W.3d 91, 93 (Mo.App. E.D.2001), a simple reading of *Baum II* clarifies that the trial court simply designated the portion of the 40–foot wide easement which would be used by the dominant tenement as actual roadway. Thus, any later evaluation of whether use of the easement by the servient tenement owner substantially interfered with the dominant tenement's use would be influenced by whether the use was of the actual roadway or of other portions of the easement.

the easement over Tract 10, and actively interfered with the Burgs' use of the easement. Dampier's and Graham's conduct was not undertaken in the context of exercising reasonable co-extensive use of the easement, but was instead undertaken with hostility, and in open defiance of the Burgs' rights.

■ There is an even more compelling explanation for the nature of the injunctive relief entered by the trial court on Count II. In fashioning the injunction, the trial court necessarily took into consideration the *express grant* of the easement in the Burgs' general warranty deed, which prohibits "cross-fencing, gates *or other obstructions* " from being placed in the easement area. (Emphasis added.) When an express grant of an easement defines the scope of the easement and correspondingly limits the use of the easement by others, the express terms of the grant are to be enforced. *Bedard,* 221 S.W.3d at 428 ("Where the terms of the easement are reduced to writing the terms of the grant . . . prevail.").

■ In this critical respect, the case before us is materially distinguishable from *Baum I, Tsevis,* and *Maasen.* Those cases also involved roadway easements where the dimension of the easement had been specifically defined by the terms of the grant. However, the grant of the easements in those cases *did not* include language expressly restricting the manner in which the easement could be used by the owner of the servient tenement. It is only when an easement is silent regarding restrictions on its use that the court must resort to determining the "reasonableness" of the use by the owner of the servient tenement. *Bedard,* 221 S.W.3d at 428–29; *Teal v. Lee,* 506 S.W.2d 492, 497 (Mo.App. 1974) ("If . . . exclusion of the erection of a fence or gate across a right-of way *is not specifically set out in a grant of easement,* the court will then consider" four factors to assess the reasonableness of the servient tenement's use) (emphasis added).

■ The trial court's injunction directing Appellants to refrain from conduct threatening, harassing, annoying, or burdening the Burgs' use, enjoyment, and maintenance of the easement is thus consistent with the law and with the intent of the Developer and the Burgs in creating the easement over Tract 10 as reflected by the express terms of the grant.[10] Notwithstanding Appellants' suggestion to the contrary, the trial court's order does not prohibit the Appellants from using the easement. Rather, it restricts the Appellants' use to conduct which does not substantially interfere with the Burgs' use—a fact driven inquiry which will necessarily take into consideration the express terms of the grant of the easement, which prohibits the placement of cross-fencing, gates, or other obstructions in the easement area. Consistent with our conclusion, we remind that Appellants did not appeal the injunctive relief entered by the trial court in favor of the Burgs on Count I for ejectment, which ordered the Appellants to "remove all obstacles and en-

10. The trial court acted within its authority in entering injunctive relief to address the private nuisance created by Appellants' conduct. Injunctive relief is an appropriate remedy in response to a claim of nuisance where a remedy at law would be inadequate. *Tichenor v. Vore,* 953 S.W.2d 171, 177 (Mo.App. S.D. 1997). A remedy at law may be inadequate where the danger of multiple suits is present if the nuisance is not abated. However, it must be demonstrated that the nuisance is likely to continue in the future absent abatement. *Lademan v. Lamb Const. Co.,* 297 S.W. 184, 185–86 (Mo.App.1927). Here, the trial court could reasonably infer from the evidence that the Appellants' conduct reflecting their disdain for the easement over Tract 10 would likely continue into the future if not enjoined.

croachments within the easement area across Tract 10 ... and to refrain from any future such encroachments which interfere with [the Burgs'] use and enjoyment of the easement."

Point One is denied.

### Point Two

 In their second point on appeal, Appellants maintain that the trial court's order that they refrain from conduct threatening, harassing, annoying, or burdening the Burgs' maintenance, use, and enjoyment of the easement is too vague and overbroad to be enforceable. We disagree.

 We review the trial court's grant of an injunction pursuant to the standards set forth in *Murphy v. Carron*, 536 S.W.2d at 32. *Maasen*, 133 S.W.3d at 518. However, "[w]hether an injunction should be granted is a matter of the trial court's discretion in balancing the equities." *Doe I v. Phillips*, 259 S.W.3d 34, 37 (Mo.App. W.D.2008). "We are mindful that molding an appropriate injunctive decree rests largely in the sound discretion of the trial court, which is vested with a broad discretionary power to shape and fashion relief to fit the particular facts, circumstances and equities of the case before it." *Schluemer*, 916 S.W.2d at 379. As such the decision to grant an injunction will be reviewed for an abuse of discretion. *Doe I*, 259 S.W.3d at 37. The trial court abuses its discretion when the judgment is clearly against the logic of the circumstances then before the trial court and is so arbitrary and unreasonable as to shock the sense of justice and indicates a lack of careful consideration. *Whitworth v. Jones*, 41 S.W.3d 625, 627 (Mo.App. E.D.2001).

Here, given the particular facts, circumstances, and equities of this case, we do not believe that the trial court abused its discretion in shaping and fashioning injunctive relief. The conduct of the Appellants which interfered with the Burgs' maintenance, use, and enjoyment of the easement over Tract 10 does not fit neatly into definable categories. All of the conduct was, however, clearly designed to threaten, harass, annoy, or burden the Burgs' maintenance, use, and enjoyment of the easement, and in fact appeared to have been motivated by a desire to negate the validity of the easement. The trial court cannot be expected to anticipate, describe, and prohibit every imaginable act the Appellants might engage in which would constitute threatening, harassing, annoying, or burdensome conduct.

We are not persuaded, therefore, by Appellants' assertion that they will be unable to figure out what conduct will violate the terms of the injunction. The general terms of the injunction are not materially different from the generalized legal standard applied in the absence of an injunction to determine whether a servient tenement owner's use of an easement "substantially interferes" with the dominant tenement. In either case, the trial court will be required to make a factual finding about the propriety of Appellants' specific future conduct.

Given the evidence in this case, we believe the Appellants' professed confusion about the scope of the injunction is disingenuous. Should future conduct by the Appellants present a specific unanticipated concern about the scope of the injunction, the trial court will remain free to modify or clarify its terms accordingly. *See Edmunds v. Sigma Chapter of Alpha Kappa Lambda Fraternity, Inc.*, 87 S.W.3d 21, 30 (Mo.App. W.D.2002) (holding that issues regarding the reasonableness of constraints imposed by an injunction can be taken up with the trial court, which retains jurisdiction to modify its own injunction).

Point Two is denied.

### Points Three, Four and Five

In their third, fourth, and fifth points on appeal, Appellants collectively maintain that there was no substantial or competent evidence presented in connection with the Burgs' private nuisance claim to support: (i) the conclusion that Appellants' use of the easement interfered with the Burgs' use and enjoyment of the easement (point four); (ii) the conclusion that temporary or permanent obstacles in the easement area interfered with the Burgs' use and enjoyment of the easement (point five); or (iii) the award of damages in the amount of $5,000.00 (point three). We disagree.

As we have noted, Appellants have not contested the trial court's Judgment in favor of the Burgs on Count I for ejectment, a judgment which necessarily required the trial court to find that the Appellants substantially interfered with the Burgs' use and enjoyment of the easement, and/or engaged in conduct expressly prohibited by the written grant of the easement, by placing obstacles and encroachments (whether temporary or permanent) in the easement area. Certainly, substantial and competent evidence was presented supporting this conclusion, as is reflected by our outline of the Appellants' conduct, *supra.* That same uncontested finding applies equally to support the trial court's Judgment in favor of the Burgs on Count II for private nuisance. In Missouri, "[i]nterference with or obstruction of an easement is a [per se] nuisance." *Mondelli v. Saline Sewer Co.*, 628 S.W.2d 697, 699 (Mo.App. E.D.1982). Points three and four are denied.

Appellants argue alternatively that even if a private nuisance was established by the evidence, the trial court's award of damages in the amount of $5,000.00 was not supported by substantial and competent evidence.

Before awarding actual general damages for a private nuisance, it is necessary to determine whether the injury from the nuisance is temporary or permanent, as the measure of general damages is impacted. If the injury from the nuisance is permanent, the measure of general damages is the diminution in the market value of the land, i.e. the difference in the value of the land before and after the nuisance arose. *Bartlett v. Hume–Sinclair Coal Mining Co.*, 351 S.W.2d 214, 217 (Mo.App. 1961). If the injury from the nuisance is temporary, the measure of the general damages is the depreciation in the rental value or usable value of the property during the continuance of the injury. *Id.* Proof that actual general damages were in fact incurred is not an essential element of a nuisance claim however, as once a nuisance is found, nominal damages can be awarded. *Hawkins v. Burlington Northern, Inc.*, 514 S.W.2d 593, 602 (Mo. banc 1974). Moreover, whether or not the nuisance is permanent or temporary, and whether or not actual general damages are incurred, an aggrieved party is always entitled to recover special damages which are proximately caused by the nuisance. *Frick v. Kansas City*, 117 Mo.App. 488, 93 S.W. 351, 354 (1906). Special damages can include compensation for inconvenience. *Clark v. City of Springfield*, 241 S.W.2d 100, 108 (Mo.App.1951) (abrogated on other grounds by *Bettinger v. City of Springfield*, 158 S.W.3d 814 (Mo.App. S.D.2005)).

The private nuisance created by the Appellants' conduct was by its nature temporary. If *general* damages were to be awarded, therefore, the Burgs' were required to establish that they suffered a reduction in the rental or usable value of Tract 9 during the continuance of the nuisance. Appellants argue that no such evidence was offered by the Burgs. We disagree. The conduct of the Appellants included their effort to secure the Tres-

pass Notice from Stevenson. Mr. Burg testified that the recorded Trespass Notice reduced the usable value of his property to $0.00—a reasonable inference the court could have drawn even without Mr. Burg's express testimony, as denying Tract 9 access to Tract 1 left Tract 9 completely landlocked with no possible means of ingress or egress to North Tucker School Road. Though the Trespass Notice has now been declared invalid, for the time it remained of record and a cloud on title, it certainly impacted the usable value of Tract 9. We cannot say that the trial court's assignment of $5,000.00 for general damages for this impact on the usable value of Tract 9 is without evidentiary support.

In any event, as noted, evidence of a reduction in the rental or usable value of Tract 9 was not required as a pre-condition to finding a private nuisance, as the trial court was free to award nominal damages and any special damages supported by the evidence. We agree with Appellants that $5,000.00 would not be a nominal damage award. *See Simpkins v. Ryder Freight System, Inc.*, 855 S.W.2d 416, 423 (Mo.App. W.D.1993) (holding that nominal damages are awarded at a "trifling sum, usually no more than $1.00, sometimes less."). The $5,000.00 damage award could, however, have represented a combination of nominal damages and *special* damages for the inconvenience the Burgs clearly sustained as a result of the Appellants' conduct. *Clark*, 241 S.W.2d at 108.

The Judgment does not identify whether the damages awarded were general, nominal, or special damages. Nor was the Judgment required to identify the category or categories within which the monetary award fell, as no party timely requested findings of fact and conclusions of law on the issue of damages as would have been permitted by Rule 73.01. As such, we will uphold the trial court's award of damages if it can be supported on any legal theory. *Hutchison v. Cannon*, 29 S.W.3d 844, 846 (Mo.App. S.D.2000). For the reasons herein discussed, we find that substantial and competent evidence supports the trial court's damage award.

Point Five is denied.

### Point Six

 In their sixth and final point on appeal, the Appellants maintain that the trial court erred in entering a $5,000.00 joint and several judgment on the nuisance claim because "none of the complained of acts were ... done by" Dampier. We disagree.

Viewing the evidence in the light most favorable to the Judgment, Dampier did interfere with and obstruct the Burgs' right to use the easement. Dampier initiated her own lawsuit challenging the legal validity of the easement. Dampier placed and maintained the permanent waterers in the easement area. Dampier was working cooperatively with Graham to challenge the validity of the easement, evidenced by written communications directed to the Burgs in 2008. Dampier and Graham took the position in correspondence that their collective interests were being impacted by the Burgs' use of the "invalid easement." Dampier testified that she had several conversations with Graham about the validity of the easement, consistent with an active participation in the ongoing campaign to harass the Burgs and to interfere with their maintenance and use of the easement.[11] Graham and Dampier filed joint counterclaims for adverse possession, for ejectment of the Burgs as to both Tract 10 and Tract 1, for property damage and related loss of income associated with the

11. This observation is not inconsistent with the trial court's rejection of the Burgs' civil conspiracy claim against Graham and Dampier involving the right to use Tract 1.

Burgs' 2002 removal of the fence on the northern and southern property lines of Tract 10, and for property damage to the waterers located in the easement area. Finally, even Appellants admit in their point relied on that Dampier participated in maintaining the obstructions in the easement area. Substantial and competent evidence supports the conclusion that Graham and Dampier each created and perpetuated a private nuisance impacting the Burgs' maintenance, use, and enjoyment of the easement.

 "An action for private nuisance rests on tort liability." *Peters v. Conti-Group*, 292 S.W.3d 380, 385 (Mo.App. W.D. 2009). "In Missouri, [joint] tort-feasors are jointly and severally liable for the harm caused to a plaintiff." *Hance v. Altom*, 326 S.W.3d 133, 136 (Mo.App. S.D. 2010). Thus, a plaintiff " 'may sue all or any of the joint or concurrent tort-feasors and obtain a judgment against all or any of them.' " *Id.* (citation omitted). Neither Dampier nor Graham sought to allocate their respective liability to the Burgs as may have been permitted by Section 537.067 (RSMo Cum.Supp.2009). The trial court's joint and several judgment against the Appellants awarding the Burgs' monetary damages for the private nuisance caused by the Appellants is not erroneous.

Point Six is denied.

### Conclusion

The judgment of the trial court is affirmed.[12]

All concur.

---

12. This Opinion effects title to real estate, specifically Tract 1, Tract 9, and Tract 10 identified on that certain Survey recorded of record at Book 702, Page 646 in the Office of the Boone County Recorder of Deeds. We will leave to the Burgs the task of duly noting this Opinion on the real estate records upon the issuance of our mandate.